## In re Frank A. Molgano, Jr.

[653 A.2d 772]

No. 93-017

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed November 10, 1994

26

*John M. Ruggiero* of *McClallen Ruggiero P.C.*, Rutland, for Appellant.

*Seth B. Bongartz* of *Witten, Saltonstall & Woolmington, P.C.*, Bennington, for Appellee.

**Morse, J.** Frank A. Molgano, Jr. appeals a decision of the Environmental Board denying his application for an Act 250 land use permit for the construction of two professional office buildings on Route 7 North in the Town of Manchester. We hold that conformance with a town plan under 10 V.S.A. § 6086(a)(10) is to be measured with regard to the zoning bylaws in effect at the time of application for local zoning permits, and we reverse.

Molgano's journey toward obtaining permission to construct two office buildings took many steps and has involved, so far, seven years of delay. In June 1987, he applied to the Manchester Zoning Board of Adjustment (ZBA) for a zoning permit to build three office buildings. Molgano's property was located on Route 7 North in the "Transient Commercial Overlay" (TCO) section of the "Farming and Rural Residential" (FRR) district of Manchester. The erection of professional office buildings was specifically permitted on Molgano's property under Manchester Zoning Ordinance 6.34 in effect at that time. Molgano's project, however, was also subject to Manchester Zoning Ordinance 6.36, the town's interim growth management bylaw, because of its size and potential impact on the area. The ZBA denied Molgano's permit application under the interim zoning bylaw, concluding that Molgano had failed to demonstrate that (1) the project satisfied local and state regulations concerning water supply and sanitary waste disposal, (2) the project would not result in water pollution or cause an undue impact on air quality, and (3) the project had an adverse effect on the scenic and natural beauty of the area because the site was over-maximized.

In 1988, after receiving a statement of conditions from the Agency of Natural Resources allowing him to develop wetlands on the site,

Molgano appealed to the Bennington Superior Court. That court concluded that Molgano satisfied his burden of proof under the interim zoning bylaw and Zoning Ordinance 6.32 that water pollution and adverse effects on the scenic and natural beauty of the area would not occur, but it denied the permit without prejudice because Molgano had failed to obtain a water and sanitary waste disposal permit from the proper state authority. Molgano applied for and received the water supply and wastewater disposal permit from the Department of Environmental Conservation in November 1989.

In 1990, after Molgano had complied with all applicable town zoning bylaws, the Manchester Board of Selectmen issued him a permit, subject to conditions, to erect two, rather than three, professional office buildings. One of the conditions was that the permit would expire two years from its date of issuance, if Molgano had not demonstrated an intention to proceed with the project. Molgano was content with the two-building permit and began negotiation with the Vermont Department of Environmental Conservation for a permit under Vermont Wetland Rules. That permit was obtained on August 21, 1991.

In October 1991, after redesigning his project based on the conditions in his zoning permit and obtaining amended approvals from various agencies to reflect these changes, Molgano applied to the District #8 Environmental Commission for an Act 250 permit. Shortly before Molgano entered the Act 250 process, however, the Town amended Manchester Zoning Ordinance 6.34 to prohibit the erection of new professional office buildings in the immediate area of Molgano's property. Molgano and the Town requested the commission to limit its review to § 6086(a)(10), which requires the proposed development to conform to any duly adopted local or regional plan. The commission concluded that the construction of two professional office buildings in Manchester did not conform to either the Manchester Town Plan or the Regional Plan of Bennington County. Accordingly, the commission denied the permit. Molgano appealed the commission's decision to the Environmental Board, which also determined that the proposed project did not conform with either the Town or Regional plan.

Molgano now appeals from the Board's decision, essentially claiming that it erred by concluding that the zoning bylaws were irrelevant to its interpretation of the Town Plan and that, had the Board given proper consideration to those bylaws, the Board would have found that his project was in conformance with the Town and Regional

plans. We review the issues raised in the appeal, keeping in mind that the Board's interpretations of Act 250 are treated with a high level of deference and, absent compelling indication of error, will be sustained on appeal. *In re Killington, Ltd.*, 159 Vt. 206, 210, 616 A.2d 241, 244 (1992).

I.

In *In re Green Peak Estates*, 154 Vt. 363, 368–70, 577 A.2d 676, 679 (1990), we affirmed the denial of an Act 250 permit for failure to conform to a regional plan because the proposed development violated a specific policy prohibiting residential development on slopes greater than twenty percent. In that case, we specifically avoided decision on whether the Board's conclusions could be upheld on the basis of "more general, abstract policies in the plan." *Id.* at 370, 577 A.2d at 679–80.

Unlike the regional plan in *In re Green Peak Estates*, the Manchester Town Plan contains no specific policy that would prohibit the proposed development. Section 4.2(2) of the Manchester Town Plan, which refers to the TCO provides:

> A significant portion of Manchester's economy is based on the tourism industry. The Transient Commercial zones accommodate certain uses related to the tourism industry (e.g. motels, inns, restaurants), but care must be taken to prevent such problems as traffic congestion and the loss of scenic open space which could occur if an excessive number of these businesses are permitted. Consideration should be given to increasing restrictions on pe[r]mitted uses in the TC zone on Route 7 (north) and to provide for a restricted TC zone from the Sunderland Town line to the Manchester Village line. Consideration should also be given to providing mechanisms for minimizing any negative impacts of commercial development in the TC zones and to providing innovative zoning techniques to facilitate efficient site utilization. Zoning dimensional requirements should encourage a relatively low density of development while promoting open space preservation along the highways.

Based on this broad, nonregulatory language, the Board determined that the only permitted transient commercial uses in the district were tourist-related and that all other uses were prohibited. We think the Board's conclusion goes too far. The plan espouses no specific policy of encouraging tourist businesses nor any specific policy against other

types of commercial buildings. The plan only notes existing accommodation of tourist businesses while advising that care must be taken to preserve open spaces and avoid traffic congestion in the future. The only clear intent of the Town Plan is to limit the effects of excessive numbers of tourist-related businesses, not limiting business to tourism. Section 4.2(2) of the Town Plan is, at best, ambiguous regarding what types of transient commercial uses are included in the plan.

■ Zoning bylaws are more than strong indications of legislative intent in determining the meaning of an ambiguous town plan; they are the specific implementation of the plan. The Board concluded, however, that zoning bylaws were irrelevant because the Board was required by statute to determine whether a project conforms with a town plan, not with zoning bylaws that may or may not implement a town plan. Bylaws, however, must conform to the plan that guides their creation. A town may not adopt zoning regulations unless it has adopted a town plan. 24 V.S.A. § 4401(a). The law specifically requires that zoning bylaws "have the purpose of implementing the [Town] plan, and shall be in accord with the policies set forth therein." *Id.*; see *Kalakowski v. John A. Russell Corp.*, 137 Vt. 219, 225, 401 A.2d 906, 910 (1979) (zoning regulations must reflect town plan). The plan and zoning bylaws are drafted and adopted by the same bodies within the town. See 24 V.S.A. §§ 4384–4385 (plan), and 24 V.S.A. §§ 4403–4404 (zoning bylaws).

■ We have previously defined the relationship between plans and zoning bylaws that conflict with or only partially implement a plan. In *Smith v. Winhall Planning Commission*, 140 Vt. 178, 436 A.2d 760 (1981), a plan provided for development at a density no greater than one unit per five acres for a particular area. The zoning bylaws generally implemented this policy but allowed one unit per acre in a specific part of the area involved. In response to the argument that the zoning bylaws were invalid for nonconformance with the plan, this Court stated:

> The regulations as adopted may indeed be inconsistent with the Town Plan, but the total consistency upon which this argument is predicated is not a legal requirement. The plan is a general guideline to the legislative body, an overall guide to community development. Partial implementation is not unusual; the specific implementation is the part adopted in the zoning regulations. *The regulations control the plan.*

*Id.* at 183, 436 A.2d at 762 (citations omitted) (emphasis added). Further, we have stated that "[a]lthough the [Town] plan may recommend many desirable approaches to municipal development, only those provisions incorporated in the bylaws are legally enforceable." *Kalakowski*, 137 Vt. at 225–26, 401 A.2d at 910. Because the Board's interpretation would effectively give nonregulatory abstractions in the Town Plan the legal force of zoning laws, we agree with Molgano that the Board erred as a matter of law in concluding that the Town's zoning bylaws were not germane to the meaning of the Town Plan.

██ The Board also found that Molgano's development was not in conformance with the Regional Plan. The Regional Plan is similarly broad and vague and contains *no prohibition on office uses in the area* involved. The Regional Plan does not contain a specific policy against this type of development as we found in *Green Peak Estates*. In addition, the Board's conclusion that the project is not a low density use is clearly erroneous given the superior court's June 2, 1989 conclusions that, even with three buildings, ninety-three percent of the parcel would have remained open, sixty-three percent of the parcel would have remained open green space, and that the project therefore satisfied the interim zoning bylaw's protection of open land and visual approaches to the town. The Town Selectmen further eliminated one building and reduced building coverage of the lot to 4.8% as a condition of the permit. Accordingly, we also disagree with this part of the Board's rationale.

## II.

██ The Board went on to note that Manchester Zoning Ordinance 6.34 would prohibit Molgano's development, if that bylaw were relevant to its determination of conformance with the Town Plan. The Board, however, made this determination based on an amendment to the bylaw that was adopted after the Town granted Molgano a permit for his project. Molgano argues that the Board's reasoning was incorrect because he had a vested right in the earlier version of the bylaw and in the zoning permit issued under it, and we agree. In *In re Preseault*, 132 Vt. 471, 474, 321 A.2d 65, 66 (1974), this Court held that a project's nonconformance with a town plan adopted after a developer had applied for an Act 250 permit could not be the basis of a permit denial under 10 V.S.A. § 6086(a)(10), the same Act 250 criterion considered here. We derived that rule from the policy

expressed in 1 V.S.A. § 213, which states that "[a]cts of the general assembly, except acts regulating practice in court, relating to the competency of witnesses or to amendments of process or pleadings, shall not affect a suit begun or pending at the time of their passage," and concluded: "[t]hus the intervening adoption of a master plan is, by itself, ineffective to derail proceedings validly brought and pursued in good faith to implement rights available under previous law." *In re Preseault*, 132 Vt. at 474, 321 A.2d at 66; see also *In re Taft Corners Assocs.*, 160 Vt. 583, 593–94, 632 A.2d 649, 655 (1993) (vested right in town plan in effect at time of original Act 250 umbrella permit); cf. *In re Ross*, 151 Vt. 54, 57–58, 557 A.2d 490, 492 (1989) (where no zoning regulations, and amendment to town plan pending, Act 250 application must be complete for rights under old plan to vest; new applications must comply with new plans).

■ This case demonstrates clearly that the *Preseault* reasoning can be effectuated only if we go back to the beginning of the development process at the town level. Section 6086(a)(10) is silent on when conformance is measured. Since the purpose of that section is to ensure consistency with local planning and zoning, the logical interpretation is to measure conformance at the time of the local processes.

Our zoning decisions support this view. In *Kalakowski*, 137 Vt. at 224–25, 401 A.2d at 910, we stated that people have the right to rely on the "measure of stability afforded by . . . duly advertised and formally enacted zoning regulations." In *Smith*, 140 Vt. at 181–82, 436 A.2d at 761, we adopted the rule that rights vest under regulations existing at the time of filing of a proper application. We did so because such a rule:

> is . . . the more practical one to administer. It serves to avoid a great deal, at least, of extended litigation. It makes for greater certainty in the law and its administration. It avoids much of the protracted maneuvering which too often characterizes zoning controversies in our communities. It is, we feel, the more equitable rule in long run application, especially where no amendment is pending at the time of the application, as here.

*Id.*

■ The Board's analysis in this case would essentially nullify our holding in *Smith v. Winhall Planning Commission* and allow towns to do in the Act 250 process what they could not do otherwise, i.e.,

apply changes in zoning laws retroactively. Therefore, we hold that where, as here, a developer diligently pursues a proposal through the local and state permitting processes before seeking an Act 250 permit, conformance under § 6086(a)(10) is to be measured with regard to zoning laws in effect at the time of a proper zoning permit application.

The object of the zoning law in effect at the time of Molgano's application was "to provide appropriate locations for limited types of business primarily serving the motoring public." The types of business uses permitted under that purpose were not limited to tourist uses, as found by the Board. In fact, hotels, motels, and lodging houses were only one of ten permitted or conditional uses, not all of which were tourist-related. The construction of professional office buildings was specifically permitted under Manchester Zoning Ordinance 6.34 in effect at the time Molgano applied for a zoning permit.

We need not address Molgano's other claims, given our disposition of this case.

*Reversed.*