STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| In re: Application of | } | |
| Gerald van der Weyden and Lenore Lewis | } | Docket No. 23-2-06 Vtec |
| (Appeal of Charnov, <u>et al.</u>) | } | |
| | } | |

Decision and Order

Appellants Richard Charnov, Debra Bechtel, James Lackner, Ann Graybiel, Peter Vercelli, Jane Vercelli, and Eva Richter-Wilde appealed from a decision of the Development Review Board (DRB) of the Town of Montgomery, granting conditional use approval to Appellee-Applicants Gerald van der Weyden and Lenore Lewis for a commercial facility/lodging establishment and eight cabins. Appellants are represented by Michael J. Furlong, Esq.; Appellee-Applicants represent themselves. This appeal is taken as an on-the-record appeal, as the Town has adopted and implemented the procedures necessary for such appeals pursuant to 24 V.S.A. § 4471(b).

An earlier appeal, Docket No. 102-5-05 Vtec, was remanded to the DRB under V.R.E.C.P. 5(i) at the request of the Town and by agreement of the parties after a telephone conference on the record. The remand was necessary because the matter had originally only been warned for a conditional use proceeding, yet Appellee-Applicants had applied as well for a variance. On remand the parties had intended to request the DRB to determine whether the application should be considered as a Planned Unit Development (PUD); however, Appellee-Applicants later declined to seek its consideration as a PUD.

1

The record of the proceedings,[1] including audio tapes of the hearings in March 2005 and December 1, 2005, was provided to the Court. The Court has listened to the tapes of the hearings, and has reviewed the complete documentary record. The parties were given the opportunity to submit written memoranda of law.

In an on-the-record appeal such as this one, the standard of review is whether there is substantial evidence in the record as a whole from which the factual findings of the DRB might reasonably be inferred, as well as whether the DRB correctly applied the municipal ordinance and state statute to those facts. See, e.g., In re Appeal of Lussier and Noe, Docket No. 116-5-02 Vtec (Vt. Envtl. Ct., Sept 16, 2002); In re Appeal of Doyle, Docket No. 100-5-02 Vtec (Vt. Envtl. Ct., Jan. 21, 2003); In re Application of Blakeman, Docket No. 167-8-05 Vtec (Vt. Envtl. Ct., June 19, 2006). The factual findings of the DRB are not conclusive, but they are given great weight, if the DRB adequately explains its reasons for finding as it does. In re Appeal of Leikert, Docket No. 2004-213 (Vt. Supreme Ct., Nov 10, 2004) (three-justice panel).

The proposed project is described here to the extent necessary to provide a context for the Court's analysis below of whether the DRB's findings and conclusions on each of the conditional use criteria were supported by substantial evidence in the record as a whole. Appellee-Applicants Gerald van der Weyden and Lenore Lewis own an approximately 105-acre wooded parcel of land located northerly of Hazen's Notch Road (State Highway Route 58) in the Agricultural/Residential zoning district. The land slopes down from Route 58 towards Wade Brook, which runs through the property. A view of the mountains is visible to the north; the orientation of the proposed buildings is proposed

[1] As the DRB did not make any record of its site visit to the property, the Court has no record from which to consider any evidence observed on that site visit.

2

to be to the north and away from the roadway.

Appellee-Applicants propose to construct a main house (the main lodge) for their own living space, as well as to provide common areas for serving breakfast to the guests and for guests' leisure activities; an attached garage with an apartment; and eight small detached cabins for the guest bedrooms. Four of the cabins will have one bedroom each and four of the cabins will have two bedrooms each. The main lodge is proposed to be located on a loop driveway, north of a parking lot with space for twelve cars, with the cabins in a clustered chevron extending behind the main lodge.

The total number of bedrooms in the main lodge building, the garage apartment, and the eight cabins is proposed to be eighteen, as Appellee-Applicants hold a state wastewater permit for four houses with separate individual wastewater disposal systems to serve a total of eighteen bedrooms for the property. An area tested as suitable for septic disposal is located on the easterly side of the property as shown on the application. All but thirteen acres of the 105-acre property would remain under forest management, to be used for hiking and cross-country skiing by the guests of the facility and in cooperation with the neighboring cross-country ski facility. A Vermont Association of Snow Travelers snowmobile trial also runs along the bottom of the valley, but no trail is planned to connect that trail to the cabin area. Appellee-Applicants propose that all construction (other than the septic system) would be located within a 900' x 700' building envelope, set back fifty feet from the northerly edge of the Route 58 right-of-way and beginning 260 feet from the easterly boundary of the property; this development envelope was made a condition of the DRB's approval.

Appellee-Applicants did not themselves appeal any of the conditions of the DRB's approval, accordingly, we consider those conditions as part of the proposed project. As well as the development envelope, and the number of bedrooms in the cabins, the conditions require that the cabins will not be equipped with cooking facilities, that outside

3

lighting will be "minimal and non[-]obtrusive," that "no recreation area will be built in the cabin area," and that an undisturbed fifty-foot-wide buffer zone of natural trees will be maintained along the road frontage and on the sides of the area containing the main lodge and eight cabins, except where the driveway and power line easements are located. If natural screening is not present, the conditions require that "evergreen trees will be planted a minimum of eight feet tall and fifteen feet apart maximum and maintained by the owner." Conditions also limit the operation of the facility to observe "quiet hours" from 10:00 p.m. to 7:00 a.m. and to be used for "short term stays of no longer than seven days," prohibiting "long term extended stays of eight days or more." Conditions also require Appellee-Applicants to install a state-approved septic system to serve the project and to obtain building/zoning permits from the Zoning Administrator before construction.

Appellee-Applicants propose to operate the property as a "Tourist Home (bed and breakfast) with a capacity of 25 or less." They applied for conditional use approval as a "commercial facility" and applied for a variance "in order to build more free standing structures than the zoning regulations permit." In the original decision, the DRB had failed to make findings regarding the variance application; during the pretrial conferences in that matter (Docket No. 102-5-05 Vtec), the matter was remanded at the request of the Town and by agreement of the parties. The present appeal resulted from the DRB's decision after the remand.

We note that all that is before the Court in the present case is the present application for the particular use as proposed, not for any generic kind of commercial facility. Any future expansion or different type of conditional use proposed for this property or any other properties in the area would have to be the subject of a new or amendment application based on the Zoning Regulations as they may exist at such future time.

4

In order to determine whether the proposal can be considered for conditional use approval or whether a variance was required, it is first necessary to determine whether it falls within any permitted or conditional use category for the Agricultural/Residential zoning district. The use categories "commercial facility," "Bed and Breakfasts" and "Planned Unit Development" are all conditional use categories in this zoning district. The use category "lodging establishment" is defined in the definitions section (§1.8) of the Zoning Bylaws and Regulations (the Zoning Regulations) but does not appear as either a permitted use or a conditional use category listed for any of the districts.

The use category "lodging establishment" is defined as "[a] building or buildings containing rooms which are rented for commercial purposes, such as sleeping units for transients, each sleeping unit consisting of at least a bedroom and use of a bathroom. Included are hotels, motels, tourist courts, cabins, motor lodges, 'bed and breakfast', and the like." §1.8. Nothing in the definition prevents the owners or a resident manager, or both, from occupying a portion of a lodging establishment as their residence. Appellee-Applicants' proposal falls within the category of lodging establishment.

As the owners intend to reside in the main lodge, and to provide breakfast in the main lodge, it is understandable that the proposal was referred to as similar to a "bed and breakfast." However, as they do not intend to provide lodging in the main lodge, it does not fall within the "bed and breakfast" type of lodging establishment, which is defined in §1.8 as "a <u>single family</u> dwelling unit <u>in which</u> the resident owner or permanent occupant provides short-term <u>lodging and</u> meals to transient paying guests" (emphasis added). Moreover, the definition of the term "dwelling unit" in §1.8 excludes such uses as a boarding house, tourist home, or similar structure or use. That is, a 'bed and breakfast' may be operated as a home occupation in a dwelling unit, but the more commercial types of lodging establishments, renting three (or more) rental units, instead fall within the use

5

category of "commercial facility." The use category of "commercial facility" is defined in §1.8 to include buildings with three or more rental units, including as examples rooming houses, dorms, and ski lodges. Thus, the DRB's consideration of the proposed project as a "commercial facility/lodging establishment" does fall within a use category eligible for consideration as a conditional use, even if the owners plan to live in the main lodge or have a resident manager or caretaker live in the garage apartment.

Appellants seem to argue that because the owners intend to reside in a portion of the lodging establishment, their residence is a second principal use of the property. That argument flies in the face of the definition of lodging establishment as including boarding houses, tourist homes, ski lodges, tourist courts, and cabins, all of which do not run themselves and may have a manager or owner in residence. It would have been surplusage in the regulations to define dwelling unit to exclude the commercial types of lodging establishments (such as boarding houses or tourist homes) if such commercial types of lodging establishments could not be owner-occupied in any event.

Thus the DRB was correct to determine that the property was only proposed to have a single principal use, that is, as an owner-occupied, commercial facility type of lodging establishment. However, §5.18 of the zoning regulations also requires that there shall be only one principal building on a lot, unless approved by[2] the DRB. To some extent, the DRB was unclear about the distinction between the principal use of the property, and whether the main lodge could be treated as the principal building, with the garage and the eight cabins being treated as accessory buildings.

Within the definition of "Principal Building/Use" the term "principal building" is

---

[2] It is unclear what standard, if any, would be applicable to the approval referenced in this section; it may be intended to refer to Planned Unit Developments, which are themselves considered as conditional uses. However, as the proposal does not propose more than one principal building, we need not reach this issue.

defined as a structure "directly involved with the primary purpose of ownership on a particular lot, which together with its accessory structures[], constitutes all structures[] of said lot." §1.8. As appears in the definition, a single property may have more than one accessory structure. Nothing in the Zoning Regulations appears to limit the number of accessory structures on a property. The definition of the term "accessory building" only requires that it be "customarily incidental and subordinate to" the principal building. In the present application, the eight cabins, without cooking facilities, qualify under this definition.

As the commercial facility type of lodging establishment is a conditional use category in the Agricultural/Residential district, the DRB was correct in considering the application as a conditional use.

Questions 1, 2, 6(b) and 6(f) of the Statement of Questions - Whether a variance was required or whether application as a PUD was required

Despite the fact that Appellee-Applicants applied for a variance to have multiple buildings on the lot, a variance was not required to accomplish this result, as the Zoning Regulations do not limit the number of accessory buildings for commercial facilities. Even if it is considered a lot "in residential use," §5.2 allows approval of additional accessory buildings by the DRB in the course of considering a conditional use.

Moreover, no variance was or could have been granted "implicitly" by the DRB. To qualify for a variance under the state zoning enabling act, an applicant must meet all five of the criteria in 24 V.S.A. §4469, as provided in §2.9.3. The DRB would have had to have made findings that all five of the variance criteria were met. It could not have found that they were met, as it would be possible to develop a 105-acre property for some reasonable use allowed under the Zoning Regulations without a variance. §2.9.3.2.

What the DRB concluded instead was that the proposal could be analyzed as a

7

commercial facility/lodging establishment type of conditional use, and that a variance was not required. The DRB was correct in its determination that the variance application was moot, and correctly denied or dismissed the variance application for that reason.

In any event, if the multiple buildings did not qualify as a commercial lodging establishment use with accessory buildings, then the project would have to have been applied for as a Planned Unit Development, not as a variance, as it would have been a mixed residential and commercial (lodging establishment) use that would have required approval of a deviation[3] from §5.18's restriction as to multiple principal buildings. As a PUD is also a conditional use category in the Agricultural/Residential zoning district, the DRB could have considered and approved the same application as a PUD.

However, Appellee-Applicants declined to apply for their project as a PUD, and as we have determined in the present decision, application as a PUD was not necessary because the proposed project could be considered without the need for a deviation from the applicable requirements of the Zoning Regulations.

Question 6(d) of the Statement of Questions - procedural deficiencies[4] in the warning of the December 2005 hearing

Appellants argue that the December 1, 2005 hearing (after the stipulated remand) was improperly warned, and therefore that this matter should again be remanded to the

_____

[3] The purpose of a PUD is to "encourage flexibility of design and development," by allowing the Zoning Regulations to be modified by the DRB. §5.29. That is, as defined in §1.8, a PUD "may deviate from bylaw requirements that are otherwise applicable to the area in which it is located."

[4] An issue of whether Appellee-Applicants had <u>ex parte</u> contacts with any DRB members, after an August 2005 hearing was cancelled due to lack of notice, was also mentioned in the text of Question 6(d) but was not otherwise argued in Appellants' briefs.

8

DRB.

After the remand, the applicants, the abutters, and the interested parties from the first hearing were all sent personal notice that the matter was remanded "for reconsideration of a Conditional Use Permit to operate a commercial facility/Bed and Breakfast, Variance from the Zoning By-Laws & Regulations [for] number of detached structures on a property[,] and a Planned Unit Development." A warning was also published as required by 24 V.S.A. §4464(a)(1) in the newspaper and posted in three public places, stating in pertinent part that:

> "A case under appeal in the Environmental Court has been remanded to the Development Review Board for reconsideration. The application under appeal is DRB-01-05 applicants Gerald Van Der Weyden & Lenore Lewis for a Conditional Use Permit to operate a commercial facility/Bed & Breakfast [citations omitted] and a Variance from the Zoning Bylaws & Regulations for the number of accessory buildings [citations omitted]. The Board will be considering the information submitted with the original application under the Conditional Use criteria for a Planned Unit Development [citations omitted]."

Nothing about the published warning or the letter was misleading. As discussed above, one conditional use category in this district is a "commercial facility," another is "bed and breakfast" and yet another is "Planned Unit Development." The participants were adequately put on notice to come to the hearing prepared to present evidence and make their arguments on whether the proposal qualified for approval under any of the warned categories, as well as whether it required or qualified for a variance.

Question 3 of the Statement of Questions - Conditional Use Criterion: Character of the Area

Appellants argue that approval of the proposed conditional use should be overturned because it will have an undue adverse effect on the character of the area. Regulations §2.8.1.4. To determine the character of an area, the statute requires

9

examination of the purposes of the Agricultural/Residential zoning district and the specifically stated policies and standards of the municipal plan, rather than any existing nonconforming uses in the area. 24 V.S.A. §4414(3)(A)(ii).

However, the Town of Montgomery Zoning Bylaws and Regulations do not provide a purpose statement for any of the zoning districts. Rather, §3.5 provides only that the uses and structures must conform to the uses provided for each district and to the definitions in §1.8 (although §3.5 also allows "similar and like uses" to be "approved by the DRB after a public hearing and review").

The parties have provided the Zoning Regulations to the Court, but not the Town Plan, other than as stated in the parties memoranda. Objectives from Chapter 6 of the Town Plan are quoted in Appellee-Applicants' brief as: "[t]he provision of recreational opportunities is vital in promoting the community's quality of life and economic development;" and "[e]ncouraging environmentally sound, clean businesses, new technology, home-based businesses, and enhancement of our tourist trade will lead to a more stable tax base and help in reducing reliance on local property taxes." Statements and policies from Chapters 6, 11, 14 and 15 of the Town Plan are quoted in Appellants' brief as: "[t]he Town has some of the most beautiful hiking, hunting and fishing areas in the State and these areas should be preserved if possible;" and "[m]aintain the scenic character of the Town's rural byways;" "[r]ecognize the importance of the area's natural features to the overall quality of life enjoyed by Montgomery residents;" "[g]uide development away from productive agricultural or forest soils;" "[l]imit the loss of local wildlife habitat;" and "[m]aintain the character of existing neighborhoods and avoid potential conflicts between incompatible land uses." None of these policies defines the Agricultural/Residential district as distinct from the other zoning districts; however, we will consider these policies in reviewing the DRB's determination of the effect of the proposed project on the character of the area.

10

As well as the agricultural and residential uses allowed in the Agricultural/Residential district as permitted uses without DRB review, allowed uses in the district (requiring DRB review) include campgrounds, commercial facilities (including commercial lodging such as hotels, motels, tourist homes and boarding houses), home occupations, bed and breakfasts, mobile home parks, multiple-family dwellings, outdoor and indoor recreation, personal and professional business services, and planned unit developments (PUDs).

The DRB had before it evidence that the character of the area on Hazen's Notch Road includes many full time residences and some seasonal residences; that a nature center operated by the Hazen's Notch Association is located nearby on the road, offering a children's day camp and hiking in the summer and snowshoeing and cross-country skiing in the winter; and that a nearby art center was opened offering[5] art classes and 4-H activities. The DRB had before it evidence that a restaurant formerly located nearby had included a separate structure for rental lodging, and that three other lodging establishments (the Trout River Inn, the Phineas Swan, and the Black Lantern), are located within approximately three miles of the proposed project, although Appellants' argument suggests they may be located in a different zoning district.

The DRB had before it evidence that the area around the project is beautiful, and that it attracts seasonal tourists, who come to enjoy the hiking, hunting, fishing, cross-country skiing, and snowmobiling opportunities in this scenic area. The DRB had before it evidence that the property slopes down away from the road, so that the proposed cabins

---

[5] As this is an on-the-record proceeding, the Court cannot consider any evidence not provided to the DRB. As the record does not include the photocopied flyer for the "Daymoon Art Center and Retreat," attached to Appellee-Applicants' reply memorandum, we cannot determine whether the DRB had before it evidence that the art center has sleeping accommodations for eight.

would be located lower than the road level, and that, with the requirements of a fifty-foot-wide buffer of trees, "minimal and non-obtrusive" lighting and the required 'quiet hours,' both the slope of the land and the wooded nature of the land would protect the proposed project from visibility from the road and from visibility from the neighboring properties.

The DRB's findings regarding the character of the area are supported by substantial evidence in the record as a whole, and support its conclusion that the proposal will "add to the character of the area" and "enhance the area by offering lodging to seasonal travelers," and therefore that it will not have an adverse effect on the character of the area.

### Question 4 of the Statement of Questions - Conditional Use Criterion: Traffic

Appellants argue that approval of the proposed conditional use should be overturned because it will have an undue adverse effect on traffic on nearby roads and highways. Regulations §2.8.1.2 . The DRB had before it evidence that the occupancy rate of area lodging is approximately 25% to 30%, so that approximately three of the guest cabins may be expected to be occupied at any given time, except during peak periods. The DRB had before it evidence that the proposal can be expected to add three or four cars to the traffic on Route 58, or a maximum of eight to twelve cars during peak occupancy of the twelve bedrooms in the eight cabins, beyond that of Appellee-Applicants' own residence.

The DRB had before it evidence that Hazen's Notch Road has a large volume of seasonal tourist traffic, and is used as a truck traffic route except during the winter months. Appellants' brief refers to facts not elsewhere in the record[6] that Hazen's Notch Road is unpaved, is closed to through traffic in the winter, and is subject to problems during mud season. Even assuming these facts, the DRB's finding that the proposed use of the

---

[6] The Court understands that these facts may have been assumed to have been known by all participants, including the DRB members.

structures will only create a minimal amount of additional traffic, was based on substantial evidence in the record as a whole. There was no evidence in the record that the project would generate peak traffic during mud season. The DRB's findings regarding the effect of the project on traffic on Hazen Notch Road are supported by substantial evidence in the record as a whole, and support its conclusion that the proposal will only add "a minimal amount of additional traffic" to an already large volume of seasonal tourist traffic, and therefore that it will not have an adverse effect on traffic on roads and highways in the vicinity.

Question 5 of the Statement of Questions - Conditional Use Criterion: Capacity of Community Facilities

Appellants also argue that approval of the proposed conditional use should be overturned because it will have an undue adverse effect on the capacity of planned and existing community facilities. Regulations §2.8.1.1. However, the community facilities analyzed under this subsection are the services and facilities provided by the municipality or community, such as municipal water supply and sewage disposal, fire protection, school services, recreation facilities, solid waste facilities or police protection. In re Meaker, 156 Vt. 182, 185 (1991). The term "community facilities" does not include other zoning districts or commercial areas in which established lodging businesses are already located. Appellants do not allege any impact on the listed types of community facilities, and no evidence was presented that the proposed project would affect any of these community facilities. The DRB's finding that the proposed project would have little or no effect on existing or planned community facilities, and the conclusion that it therefore would have no undue adverse effect on those facilities, is supported by substantial evidence in the record as a whole.

<u>Question 6(a) and 6(c) of the Statement of Questions - Conditional Use Criterion:</u>
<u>Conformance to Applicable Bylaws in Effect</u>

Subsections (b), (d), (e), and (f) of Question 6 have been discussed above.

In Question 6(a), Appellants argue that approval of the proposed conditional use should be overturned because the proposed project conflicts with several specific policies set forth in the Town Plan. Section §2.8.1.5 of the Zoning Regulations requires that a conditional use not have an undue adverse effect on "other Town By-laws, Ordinances, and Regulations then in effect." The Montgomery Town Plan, however, is not a bylaw, ordinance, or regulation. Even if the proposed project were to fail to conform to provisions of the Town Plan, it does not necessarily fail to conform to the zoning ordinance or any other municipal bylaw, ordinance or regulation. That is, although a town plan may recommend many desirable approaches to municipal development, only those policies and provisions incorporated in the bylaws are legally enforceable. <u>Kalakowski v. John A. Russell Corp.</u>, 137 Vt. 219, 225-26 (1979); <u>Smith v. Winhall Planning Commission</u>, 140 Vt. 178, 183 (1981); and see <u>In re Molgano</u>, 163 Vt. 25, 30-31 (1994); <u>In re Application of Blakeman</u>, Docket No. 167-8-05 Vtec (Vt. Envtl. Ct., June 19, 2006). As discussed with regard to the character of the area, of course, provisions of the Town Plan may be used to help determine the intended character of the area.

In Question 6(c), Appellants argue that approval of the proposed conditional use should be overturned because the DRB "believed" it had no authority to impose conditions "requiring the set aside of green space." Appellants are correct that §2.3.2.4 provides the DRB with the authority to impose reasonable conditions and safeguards when approving conditional uses. While the Chair of the DRB did initially state incorrectly that the DRB lacked authority to impose conditions, he corrected that misstatement on the record later in the hearing, so that neither the DRB members nor those attending the hearing were misled.

14

Moreover, the DRB's written decision of January 13, 2006, granting conditional use approval, did in fact impose conditions on the project's operation, including those regarding quiet hours, lighting, prohibition of kitchen facilities and duration of cabin occupancy, as well as those regarding the fifty-foot-wide wooded buffer zones and limiting development (other than the septic system) to the 900' by 700' building envelope. Therefore, the DRB both understood and exercised its authority to impose conditions in the present proceeding, including conditions restricting development in the buffer zones and beyond the building envelope.

Accordingly, based on the forgoing, it is hereby ORDERED and ADJUDGED that the decision of the Development Review Board granting Appellee-Applicant's application for conditional use approval, with the conditions imposed by the DRB, for a commercial facility/lodging establishment consisting of a main lodge, an attached garage with apartment, and eight detached cabins, is supported by substantial evidence in the record as a whole, and is therefore AFFIRMED, concluding this appeal.

Dated at Berlin, Vermont, this 29th day of November, 2006.

_____
Merideth Wright
Environmental Judge

15