STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| **In re Gizmo Realty/VKR Associates, LLC** | } | **Docket No. 199-9-07 Vtec** |
| **(Appeal of Act 250 Permit #3R0990)** | } | |
| | } | |

## Decision on the Merits

Appellant Two Rivers-Ottauquechee Regional Planning Commission ("Appellant" or "Regional Commission") has appealed an approval by the District #3 Environmental Commission of an Act 250 permit application of Gizmo Realty Holdings I, LLC, as developer and VKR Associates, LLC, as landowner (hereinafter collectively referred to as "Gizmo") for a commercial development to be known as "Bradford Square Shopping Center" and located along the easterly side of U.S. Route 5, near the interchange associated with Exit 16 of Interstate 91 ("I-91"). The Regional Commission expressed concerns regarding the project's conformance with the Two Rivers-Ottauquechee Regional Plan ("Regional Plan"). When our April 30, 2008 Decision on cross-motions for summary judgment resolved some, but not all, of the legal questions posed in this appeal, the matter was thereafter set for trial. The Court participated in a site visit and then presided over a merits hearing, which was followed by the parties' post-trial briefings.

The Regional Commission was assisted prior to trial by Amanda S.E. Lafferty, Esq., and at trial by Steven F. Stitzel, Esq. Applicant Gizmo has been represented throughout these proceedings by John C. Candon, Esq.

## Procedural Background

Early last year, each party filed a motion requesting that the Court enter summary judgment in its favor on each of the three legal issues raised in Appellant's Statement of Questions. By its April 30, 2008 Decision, this Court dismissed Appellant's Question 1, entered summary judgment in Gizmo's favor as to Appellant's Question 2, and denied both parties' summary judgment requests on Appellant's Question 3, thereby leaving that issue to be litigated at trial. The Regional Commission sought a modification of the Court's April 30, 2008 Decision, which the Court denied by Entry Order dated June 23, 2008.

1

In its post-trial legal memorandum, the Regional Commission again asserts that it was error for the Court to conclude that Gizmo was entitled to have its Act 250 application considered for conformance with the prior Regional Plan, known as the 2003 Regional Plan, and not the Regional Plan that had just been amended at the time Gizmo submitted its Act 250 application.[1]

To the extent that the Regional Commission's post-trial legal memorandum is intended as a request that the Court amend its April 30, 2008 Decision, we respectfully decline to do so. The Court continues to believe that it correctly addressed the specific legal issue raised by the parties' pre-trial motions and addressed by the Court's April 30, 2008 Decision.

We continue to recognize that our April 30, 2008 Decision may initially appear to run counter to the general maxim that an applicant's rights only vest upon the filing of a complete land use application. Smith v. Winhall Planning Comm'n, 140 Vt. 178, 181 (1981). However, a closer examination reveals that our April 30, 2008 Decision does not run counter to this general maxim. Rather, we concluded that where a developer diligently pursues municipal permit approval for its project, the developer enjoys a vested right to Act 250 criterion 10 review under the regional plan that was in effect at the time the developer submitted a complete zoning application, even when the regional plan was revised prior to the filing of the developer's Act 250 project application. See April 30, 2008 Decision at 4–8 (following the rationale of In re Burlington Broadcasters, Inc. d/b/a WIZN, et al., No. 4C1004R-EB, Memorandum of Decision on Group 2 Preliminary Issues, slip op. at 6–8, 11 (Vt. Envtl. Bd. Nov. 25, 2003), available at http://www.nrb.state.vt.us/lup/decisions/2003/4c1004r-eb-grp2pi-mod.pdf (citing In re Molgano, 163 Vt. 25, 32–33 (1994)). In arriving at this determination, we also relied upon the rationale that this non-rigid view of vesting, particularly in relation to conformance with a regional plan under Act 250 criterion 10, is an established and more proper outcome here, given that modern land use development has become "'an intensely regulated process requiring compliance with a host of complex land use regulations and the issuance of multiple governmental approvals prior to ground-breaking.'" Id. at 6 (quoting Grayson P. Hanes & J. Randall Minchew, On Vested

[1] The subsequently amended Plan is commonly known as the 2007 Regional Plan.

In reviewing the details offered by the Regional Commission, we note that although the Commission adopted the 2007 Regional Plan on May 30, 2007, the 2007 Regional Plan did not become effective until July 4, 2007. Given that Gizmo filed its Act 250 application on June 12, 2007, it is not accurate to characterize Gizmo's application as having been submitted "after" the 2007 Regional Plan came into effect.

Rights to Land Use and Development, 46 Wash. & Lee L. Rev. 373, 389 (1989)). Thus, to the extent that the Regional Commission's post-trial memorandum was intended as a renewed request to alter our April 30, 2008 Decision, that request is **DENIED**.

## Findings of Fact

Before rendering specific findings, we note that while this is a de novo appeal, our review is limited to the factual issues preserved for our review by the Appellant's Statement of Questions. V.R.E.C.P. 5(f); see also Vill. of Woodstock v. Bahramian, 160 Vt. 417, 424 (1993). The Regional Planning Commission filed a Statement of Questions posing three Questions. By our April 30, 2008 Decision, we dismissed Question 1 (which asked if the project would have a substantial regional impact), and entered summary judgment in Gizmo's favor as to Question 2 (which asked which regional plan should be given effect in this appeal).

Given our April 30, 2008 Decision, which announced our determination that the 2003 Regional Plan controls in this appeal, the Regional Commission conceded that there was no conflict between the 2003 Regional Plan and the Town of Bradford Municipal Plan ("Town Plan") and that therefore the Court was not charged with determining whether the proposed project "would have a substantial regional impact."[2] See 24 V.S.A. § 4348(h)(2); see also In re Green Peak Estates, 154 Vt. 363, 367–68 (1990) (explaining the effect of § 4348).

Thus, we are left to adjudicate in this appeal a sole legal question (Appellant's Question 3): "Is the project under consideration in conformance with the Two Rivers-Ottauquechee Regional Plan?" Based upon the evidence presented and admitted at trial, as put into context by the site visit the Court conducted with the parties, and after assigning the appropriate weight and credibility to the admitted evidence, the Court renders the following factual findings relevant to that sole legal question (as well as the background and context surrounding that issue):

**Two Rivers-Ottauquechee Regional Planning Commission and Regional Plans**

1. Two Rivers-Ottauquechee Regional Commission is a lawfully created regional planning commission with the duties and responsibilities articulated in 24 V.S.A. § 4345a.

---

[2] The Regional Commission continues to assert that the project will have a substantial impact upon the neighboring downtown and village center districts, areas which the 2003 Regional Plan seeks to protect. We address the anticipated impact of the proposed project on these areas in the Discussion section of this Decision.

2.    For the period running from July 30, 2003, through July 3, 2007, the Regional Commission had in effect a regional plan lawfully adopted pursuant to 24 V.S.A. § 4348. This regional plan is commonly referred to as the 2003 Regional Plan.

3.    The Regional Commission adopted an updated and amended regional plan on May 30, 2007, to become effective July 4, 2007. This regional plan is commonly referred to as the 2007 Regional Plan.

**Gizmo Application Timelines and Components of the Proposed Project**

4.    Gizmo first sought municipal approval for the proposed Bradford Square Shopping Center; their completed application was received by the Town of Bradford on February 23, 2007.

5.    The project site consists of 5.73± acres, of which 4.5± acres is considered primary agricultural soils. The project site is located on the easterly side of U.S. Route 5, which is also known in this area as Lower Plains Road.

6.    The proposed Bradford Square Shopping Center is depicted on Gizmo's site plan sheet C-1, admitted into evidence as Exhibit 1. Included in the proposed project are two larger buildings (Building A of 9,100 square feet and Building B of 17,000 square feet) and three smaller buildings (Buildings C, D, and E, of 2,900 square feet, 9,000 square feet, and 7,350 square feet, respectively).[3] While the specific tenants for each building were not identified at trial, Gizmo anticipates that a grocery store may occupy one of the larger buildings and a dry goods retailer may occupy another building.

7.    The project will be served by a single curb cut on U.S. Route 5. The five proposed buildings will surround an internal parking area to be used by all buildings. The project includes landscaped buffers near the borders of neighboring developed properties.

8.    The project will be served by a municipal water supply system and on-site wastewater and stormwater treatment facilities.

9.    Gizmo proposes to develop the project in two phases: Phase 1 will include site improvements and the two larger buildings, located on the southern edge of the developed property; Phase 2 two will include the three remaining buildings. Details of the Phase 2

---

[3]   The square footage listed here for Buildings C, D, and E are reflected on the Gizmo site plan (Exhibit 1). Testimony at trial included slightly different square footage estimates. To the extent that this presents a conflict within Gizmo's offered testimony, we conclude that it is not material, since Gizmo has asked only for conceptual approval of these buildings.

buildings have not been finalized; Gizmo has requested only conceptual approval of the Phase 2 buildings.

10.    The site improvements Gizmo proposes include landscaping both inside the area to be surrounded by the buildings and along the boundaries to adjacent properties, sidewalks for pedestrians and bicycle paths and racks for cyclists, and directional signs for traffic and parking.

11.    Gizmo's municipal application was approved on May 15, 2007. No appeal was taken from that approval.

12.    On or about June 12, 2007, Gizmo applied to the District #3 Environmental Commission ("District Commission") for Act 250 land use approval for its proposed commercial development.[4] The project was not changed in a material manner between the time of the municipal approval and the submission of the Act 250 application.

**Project District and Surrounding Areas**

13.    The proposed development is located in an area adjacent to I-91 Exit 16 and identified in both the Regional and Town Plans as an interchange growth area.

14.    The Two Rivers-Ottauquechee Regional Commission is a compact of twenty-seven municipalities in the east central region of our State. Because of the proximity to Interstates 89 and 91, several of these municipalities are host to interstate highway interchange areas.

15.    In the chapter relating to land use goals and expectations (Chapter III), the 2003 Regional Plan speaks to specific land use issues, opportunities, and policies for the seven interstate interchange areas. Id. at 36–39. Interchange areas in Fairlee and Sharon are considered to be part of existing village settlements and their extensions; the interchange areas located in Bradford, Newbury, Royalton, Randolph, and Thetford are separate from the established town centers and therefore present separate land use issues and opportunities.

16.    The Bradford interstate interchange area ("Bradford Interchange") is adjacent to but separate from an area designated as the Bradford Town Center. Another designated area, wholly encompassed by the Town Center area, is known as the Bradford Downtown Designation area.

17.    The Bradford Interchange area was transformed from a primarily agricultural area by the construction and opening of I-91 in the early 1970s. Since then, the Bradford Interchange area

---

[4] As noted above, Gizmo's Act 250 application was submitted after the 2007 Regional Plan was approved on May 30, 2007, but before it went into effect on July 4, 2007.

land uses have changed from primarily agricultural uses (with some residential uses) into commercial and industrial uses.

18.    The subject property is in a portion of the Bradford Interchange area known as the Lower Plain. Gizmo's proposed development is between .75 and 1.25 miles from developments in the Bradford Downtown Designation area. East of the subject property is the Bradford Industrial Park; Oak Brothers Lumber Yard is to the north. Other area developments include the Huntington Homes commercial offices, one or more grocery stores, a large dry goods store, gas stations (some including convenience stores), one or more restaurants, and several residences, some of which include home occupation facilities.

19.    The Town once considered an extension of municipal sewer services to allow for continued, planned growth in the Bradford Interchange area, recognizing "that extending sewer services to the Lower Plain could provide an opportunity to intensely develop the area and to give Bradford needed space for community services and industry." 2003 Regional Plan at 39.

20.    The downtown area in Bradford is host to a mix of commercial and retail businesses, residences, civic and government uses. The testimony presented the downtown area as having the same qualities that define many Vermont village centers: vibrant, but in need of constant work and attention by its residents to keep it vibrant.

## Discussion

As was the duty of the District Commission when it first reviewed Gizmo's application, we are charged with the responsibility of determining whether Gizmo's proposed development of the Bradford Square Shopping Center supports positive findings under Act 250 criterion 10. 10 V.S.A. § 6086(a)(10). Appellant's sole remaining Question confines our analysis to a subset of Act 250 criterion 10; the only legal issue before us is whether the proposed project conforms to the applicable regional plan. In regard to this criterion, the burden of proof is on the applicant. 10 V.S.A. § 6088(a).

We addressed this legal issue in a partial manner in our April 30, 2008 Decision. Because we did not then have a complete copy of the 2003 Regional Plan presented to us, and because our analysis on the conformance issue needed to be so fact specific, we declined to grant either party's summary judgment motion and directed the parties to prepare for trial.

At trial, Gizmo presented evidence concerning the subject property, the proposed project, and the development of neighboring properties. The Regional Commission did not contest much

6

of this evidence. The parties did, however, dispute the effect of such evidence—namely, whether the proposed development would have a substantial impact upon the Bradford Town Center and Downtown Designation areas that the 2003 Regional Plan explicitly seeks to protect.

We first note that the 2003 Regional Plan acknowledges that the interstate highway interchanges—and the development encouraged by these interchanges—can potentially have substantial impacts upon town centers and village settlements:

> Because past and present land use policy strongly affirms town centers and village centers as the principal areas for service, retail, civic, and institutional uses, it is in the interest of the Region that these areas continue to serve these vital functions. Accordingly, interchange development should not be promoted at the expense of town village centers or when it unreasonably endangers public investment in highways and transportation facilities serving the interchange.

2003 Regional Plan at 36.

The Regional Plan encourages development in certain interstate interchange areas, provided it fits within an established land use plan that:

> c) maintain[s] a high standard of scenic amenities for visually sensitive areas with due regard to impacts on neighboring land uses and highway users;
>
> d) discourage[s] creation or establishment of uses deemed more appropriate to town centers and village settlements; and
>
> e) encourage[s] planned unit developments (such as trucking terminals, industrial and office parks, service centers, professional offices and public buildings).

Id. at 37.

The Bradford Interchange area already hosts a mix of land uses and developments, including residential, retail, commercial, and industrial developments. The Regional Commission correctly notes that the 2003 Regional Plan represents the region's established goals for future development and that approval of future development should be guided by such goals and not directed by what type of development already exists. But we note that the development that currently exists within the Bradford Interchange area is material to our determination of what impact the proposed project may have on the town center and village settlements the 2003 Regional Plan seeks to protect.

The Regional Commission's argument, taken to its next logical conclusion, appears to be that the 2003 Regional Plan prohibits retail and similar village center businesses from being

established anywhere outside of the Town Center. We can find no such language in Chapter III of the 2003 Regional Plan. See id. at 36–39.

We recognize that the evidence presented at trial established that the Bradford Town Center and Downtown Designation areas are vital and vibrant village centers which require vigilant planning protections. While it is undisputed that the proposed project could host retail businesses that could also be sited within the Bradford Town Center, we cannot interpret any portion of the 2003 Regional Plan as prohibiting the establishment of such businesses in any area of Bradford other than the Town Center. The fact that such businesses already exist in the Bradford Interchange area leads us to conclude that the Bradford Town Center and Downtown Designation areas have not been substantially affected by the existing development in the Bradford Interchange area and that the proposed project, with development and uses similar to that which already exist in the Bradford Interchange area, is unlikely to have a substantial impact upon the downtown and village areas that the 2003 Regional Plan seeks to protect. We therefore conclude that the proposed project is not in conflict with the Regional Plan provisions that were the subject of the parties' legal disputes in this appeal.

The Regional Commission presented a further point in its post-trial filings that warrant our consideration—namely, the contention that the project will have a "substantial impact" on the neighboring Town Center in violation of the 2003 Regional Plan. See 2003 Regional Plan at 37. While the Regional Commission concedes that, given this Court's prior ruling that Gizmo is entitled to review of its Act 250 application under the 2003 Regional Plan, it is not necessary for the Court to determine whether the project represents a "substantial regional impact" under 24 V.S.A. § 4348(h)(2), the Court must recognize that the project will have a "substantial impact" upon the neighboring Town Center, including the designated downtown area.

The collective square footage of the proposed project (about 45,000 square feet) represents more than half of the Regional Commission's estimates of all retail and office space within the Bradford downtown area. But this fact alone is not a sufficient foundation for us to conclude that the proposed project will have a "substantial impact" on the downtown area. The Regional Commission expresses a fear that the collective size of the proposed project will attract commercial activity away from the neighboring Bradford Town Center. Such fears may have merit, but there was little factual foundation presented at trial that would allow us to render such a conclusion. In fact, the pre-existence of similar commercial developments within the Bradford

8

Interchange area, with no evidence presented of a consequent degradation caused to businesses in the neighboring Town Center, leads us to conclude that it is not likely that the proposed project will have the substantial impact on the Town Center that the Regional Commission fears. We therefore conclude that while it may be accurate to describe this project as "substantial," given its collective size, we are without facts to support a conclusion that it will have a substantial impact on the Town Center and village settlement that the 2003 Regional Plan seeks to protect. We conclude that the credible evidence presented shows that the proposed project conforms to the 2003 Regional Plan. Given that this was the only legal issue preserved for our review in this appeal, and that the District Commission rendered positive findings on all other Act 250 criteria relevant to the Gizmo application, we conclude that Gizmo should be granted an Act 250 permit.

### Conclusion

For all the reasons detailed above, we conclude that the Bradford Square Shopping Center that Gizmo proposes to develop within the Bradford Interchange area, if developed as represented in the application materials presented, is in conformance with the applicable Two Rivers-Ottauquechee Regional Plan. Given that Gizmo received positive findings from the District #3 Environmental Commission on all other applicable Act 250 criteria (see 10 V.S.A. § 6086(a)), we hereby remand this matter back to the District #3 Environmental Commission so that it may complete the ministerial act of issuing an amended Act 250 permit in conformance with this Decision. We note that this Decision supersedes the District Commission's Findings of Fact as to conformance with the applicable regional plan, but in all other respects the District Commission's other Findings of Fact remain in full force and effect.

Done at Newfane, Vermont this 10th day of March 2009.

_____
Thomas S. Durkin, Environmental Judge

9