STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Vermont Unit | Docket No. 103-8-13 Vtec |

| | |
|---|---|
| B & M Realty A250 Applic. | DECISION ON MOTION |

B & M Realty, LLP (Applicant) seeks to develop an area consisting of 167.7 acres on three separately deeded lots located between Woodstock Road (US Route 4) and Old Quechee Road near the I-89 southbound exit ramps in the Town of Hartford, Vermont (the Town).[1] In 2005, Applicant and then-landowners David and Ernest Punt requested an amendment to the Hartford Zoning Regulations on and around lot 8-196 (the Punt property) to accommodate future development of the area. The Town of Hartford Planning Commission (the Planning Commission) voted to approve the zoning amendment on September 26, 2005 and the Town Selectboard held a public hearing on the matter in November of that year.

Six years later, on May 18, 2012, Applicant filed an application with the Planning Commission for a zoning permit as required by the applicable provisions of the Town of Hartford Zoning Regulations. Applicant proposes to develop the three lots into a mixed commercial and residential use development to be known as the Quechee Highlands project (the Project). The Planning commission granted the application in a written decision dated October 17, 2012. Applicant subsequently filed an application for an Act 250 permit as required by 10 V.S.A. § 6081. District Environmental Commission #3 (the District Commission) denied the application in a written decision dated July 3, 2013 and Applicant filed a timely appeal in this Court. Now pending before the Court is Applicant's motion for partial summary judgment on the question of which, if any, regional plan is appropriate for Criterion 10 analysis.

---

[1] Two lots are located on Woodstock Road (US Route 4) and one, lot 8-196, is located on Old Quechee Road.

## Factual Background

For the sole purpose of putting the pending motion into context, the Court recites the following facts which it understands to be undisputed unless otherwise noted:

1. In 2003, the Two Rivers-Ottauquechee (TRO) Regional Commission adopted the 2003 TRO Regional Plan (the 2003 Regional Plan). Because the Town of Hartford was not a member of the TRO Regional Commission in 2003, the 2003 Regional Plan does not recognize or address the Town of Hartford.

2. On January 9, 2004, the Town discontinued its relationship with the Upper Valley Lake Sunapee Regional Planning Commission and joined the TRO Regional Commission (the Regional Commission). As part of the new association, the Town adopted the 2003 Regional Plan.

3. On July 11, 2005, Scott Milne, acting on behalf of B & M Realty (the Applicant), and David and Ernest Punt, owners of the Punt property at the time, filed an application with the Planning Commission requesting an amendment to the Hartford Zoning Regulations to expand the commercially developable acreage of the Punt property by 300%. The application requested the conversion of 10± acres on the northwest side of the Punt property from RL-5 to RL-3 and 35± acres on the east side of the lot from RL-3, RL-5, and RC-2 to a new zoning district, the Quechee Interstate Interchange (QII).

4. On September 26, 2005 the Hartford Planning Commission approved the proposed amendments to the Hartford Zoning regulations affecting the Punt property.

5. Applicant subsequently purchased the Punt property.

6. In 2006, acting on behalf of Applicant, Scott Milne presented the Planning Commission and professional staff with a site plan for the Quechee Highlands Project.

7. In 2007, the Regional Commission adopted the 2007 TRO Regional Plan (the 2007 Regional Plan), which replaced the 2003 Regional Plan.

8. On May 18, 2012, Applicant filed an application with the Planning Commission for the zoning permits necessary to develop the project. The application specified the intent to develop approximately 120,000 square feet of commercial space and 10,000 square feet of residential space on three separately deeded lots, including lots 8-142 and 8-149 and the Punt property, located between Woodstock Road (US Route 4) and Old Quechee Road near the I-89 southbound exit ramps.

9. The Planning Commission granted preliminary approval of the project on June 25, 2012 and final approval of the project on October 17, 2012.

10. On December 20, 2012 Applicant filed an Act 250 permit application which the District Commission denied in a written decision dated July 3, 2013. Applicant timely appealed the denial of its application.

11. The specific facts of Applicant's proposed development are not yet before us.

## Discussion

In the present motion for partial summary judgment, Applicant asks the Court to hold that the Act 250 application need not conform with the 2007 Regional Plan because its right to review of the project under Act 250 Criterion 10 vested prior to the Regional Commission's adoption of the 2007 Regional Plan. While a ruling on the application's compliance with Criterion 10 requires further facts, the question of whether Applicant's rights vested prior to the adoption of the 2007 Regional Plan is a legal question appropriate for summary judgment and ripe for our review.

## I. Summary Judgment Standard

When reviewing a motion for summary judgment, the moving party (here, Applicant) bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). In addition, when considering a moving party's motion for summary judgment, the Court will accept as true all factual allegations made in opposition to the motion and give the non-moving party (here, the Regional Commission) the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citations omitted); V.R.C.P. 56(c) (laying out summary judgment procedures). Both the party claiming that a material fact is undisputed and the party seeking to establish a dispute of material fact must support their assertions with citations to materials in the record. V.R.C.P. 56(c)(1).

## II.    Standard of Review

Applicant's motion for partial summary judgment relates to Act 250 Criterion 10, which requires that a proposed development conform with the applicable regional plan.  10 V.S.A. § 6086(a)(10).   The legal issue before the Court is not whether the proposed development conforms with the regional plan, but which version of the regional plan should be applied in reviewing the proposed development under Criterion 10.

Although Criterion 10 is silent as to when conformance is measured, the Vermont Supreme Court has held that because the "purpose of [Criterion 10] is to ensure consistency with local planning and zoning, the logical interpretation is to measure conformance at the time of the local processes[,]" signified by a "proper zoning permit application."  In re Molgano, 163 Vt. 25, 32–33 (1994) (holding that if an Act 250 applicant "diligently pursues a proposal through the local and state permitting processes before seeking an Act 250 permit, conformance under [Criterion 10] is to be measured with regard to zoning laws in effect at the time of a proper zoning permit application").   This both echoes and clarifies the Vermont Supreme Court's holding in Smith v. Winhall Planning Commission, where it adopted the minority rule that a landowner is entitled to review of a proposed land use project under the regulations in effect when he or she submitted a "proper application."  140 Vt. 178, 181–82 (1981).

## III.    A Proper Zoning Permit Application

Applicant argues that its rights concerning the Town's review of the project vested when it filed its application to amend the Town Zoning Regulations in 2005, or, alternatively, when it shared its sketch plan with the Planning Commission and professional staff in 2006.  Applicant argues that a landowner's rights vest at the start of the development process, which is signified by "the time a zoning application is first made."  (Applicants Mot. For Partial Sum. J. at 2, filed Apr. 15, 2014 (citing Smith v. Winhall Planning Comm., 140 Vt. 178, 181 (1981)).  Applicant's position is that its request for amendments to the zoning regulations was the "first major regulatory event in the course of the Quechee Highlands development" and therefore the first "zoning application."  (Reply to Appellee's Resp. to Applicants Mot. for Partial Sum. J. at 5, filed July 16, 2014).  Applicant also argues that its request for amendments marked the initial step in its diligent pursuit of a development project—signified by perseverance, assiduity, effort, and

care—and triggered vested rights. (Reply to Appellee's Resp. to Applicants Mot. For Partial Sum. J. at 3, filed July 16, 2014 (citing In re Molgano, 163 Vt. 25, 33 (1994))).

In response, the Regional Commission argues that rights vest only after filing a "complete municipal zoning application for [a] project," and that to vest rights prior to a complete zoning application would "undermine the minority rule's purpose of creating certainty about the scope and effective date of vested rights." (Two Rivers-Ottauquechee Regional Comm. Mem. in Opp'n to Appellant's Mot. for Sum. J. at 3–4, filed Jun. 13, 2014 (citing In re Gizmo Realty/VKR Associates, LLC, No. 199-9-07 Vtec, slip op. at 5 (Vt. Envtl. Ct. Apr. 30, 2008) (Durkin, J.))). Addressing both the 2005 application to amend the zoning regulations and the 2006 discussions with the Planning Commission and professional staff about the project, the Regional Commission argues that neither amount to the diligent pursuit envisioned in Molgano. Id. at 4 (citing Molgano, 163 Vt. at 27, 33 (1994)). The "start of the development process," it offers, is signified only by an application for the zoning permits necessary for development of a particular project. (Two Rivers-Ottauquechee Regional Comm. Mem. in Opp'n to Appellant's Mot. for Sum. J. at 4, filed Jun. 13, 2014).

Vermont's vested rights jurisprudence acknowledges the State's lengthy land use development process, which requires several stages of local and state permitting conducted over several months. Under the bright line rule, adopted in Smith, rights vest when a landowner files a "proper zoning application." 140 Vt. at 181–82. A proper zoning application—an application for a zoning permit for a specific project and not merely an application that will accommodate future development generally—signifies the start of the development process. See In re Keystone Development Corp., 2009 VT 13, ¶ 5, 186 Vt. 523 ("[A] permit applicant gains a vested right in the governing regulations in existence when a full and complete permit application is filed."). In order to accommodate both the interest in "consistency of local zoning . . . review with Act 250 review" and the distinct steps involved in the development process, conformance under Act 250 Criterion 10 "should be measured as of the start of the development process in the town," meaning when a zoning permit application is filed for a specific development project. In re Taft Corners Associates, LLC, 171 Vt. 135, 141 (2000).

With this legal framework in mind, we consider the facts of this case. Applicant's July 11, 2005 filing with the Planning Commission requesting an amendment to the Hartford Zoning

Regulations did not vest rights for a specific project pursuant to the Town's zoning regulations then in effect. Applicant's filing requested changes in the zoning regulations applicable to of areas of the Punt property in order to accommodate future development. The application did not initiate review of a specific development project; it sought changes that would accommodate future development generally.

In 2006, after the Hartford Planning Commission approved the proposed amendments, Applicant presented the Planning Commission and professional staff with a site plan for the Quechee Highlands Project. Applicant did not file any permit applications in conjunction with these offerings. Thus, the 2006 sketch plan did not initiate review of a specific project and therefore did not vest any rights.

Subsequently, the Regional Commission adopted the 2007 Regional Plan, which replaced the 2003 Regional Plan. Thereafter, on May 18, 2012, Applicant filed an application with the Planning Commission for the zoning permits necessary to develop the Quechee Highlands Project. The application specified the intent to develop approximately 120,000 square feet of commercial space and 10,000 square feet of residential space on three separately deeded lots, including lots 8-142 and 8-149 and the Punt property. It is this application that vested rights for Applicant's project.

Even if we could conclude that the application to amend the Town's zoning ordinance resulted in some form of vested rights for the project, we must acknowledge the more than six years that elapsed between the 2005 request to amend the zoning ordinance and the 2012 zoning application. While this Court might be inclined to afford some leeway to an applicant's diligent pursuit of a specific development project, the bright line rule established by our Supreme Court precludes an extension of vested rights under one aspect of the development process to a distinct aspect of that process pursued six years later. Compare In re Taft Corners Associates, LLC, 171 Vt. 135, 139–40 (2000) (holding that a subdivision application created vested rights for the subdivision regulations but created no vested rights to have a separate zoning permit application, filed 10 years later, considered under the zoning regulations in effect at the time of the subdivision application) with In re Molgano, 163 Vt. at 27 (holding that where the applicant diligently pursued a municipal zoning permit over four years and then, after obtaining the zoning permit, filed an Act 250 permit application the applicant's rights under Criterion 10 vested at the time of the first complete municipal permit application). We

therefore conclude that because the right to review under Act 250 Criterion 10 vests when a landowner initiates the local development process by filing a complete local zoning application governed by the same regulations, Applicant's rights vested in 2012.

**Conclusion**

Act 250 Criterion 10 requires that the Applicant must establish that the proposed development is in conformance with the 2007 Regional Plan.   10 V.S.A. § 6086(a)(10). Applicant's motion for partial summary judgment asking this Court find as a matter of law that the 2003 Plan governs its application is **DENIED**.


Electronically signed on October 07, 2014 at 10:08 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division