STATE OF VERMONT
ENVIRONMENTAL COURT

| | | |
|---|---|---|
| **Appeal of Rivers Development, LLC** | } } } } | **Docket No. 7-1-05 Vtec** **Docket No. 68-3-07 Vtec** |

**Corrected[1]**

**Decision on Rivers's Initial Motions**

These consolidated appeals[2] arise out of decisions by the Moretown Development Review Board ("DRB") and the District #5 Environmental Commission in which Rivers Development, LLP ("Rivers") was denied a conditional use permit and an Act 250 land use permit to construct and operate a stone processing quarry in the Town of Moretown ("Moretown"). Docket No. 7-1-05 Vtec concerns the DRB's denial of Rivers's zoning and conditional use application, which asserts undue adverse impacts on the Town's character, traffic, noise levels and water supplies. Docket No. 68-3-07 Vtec concerns the denial by the District #5 Environmental Commission ("Commission"), issued on March 14, 2007, of Rivers's Motion to Alter the Commission's Decision of January 19, 2007. Rivers asserts in this second appeal that the Commission rendered positive findings on all but two of the twenty-nine Act 250 criteria and sub-criteria; Rivers challenges the Commission's conclusions that Rivers's proposal did not comply with 10 V.S.A. § 6086(a)(10) (conformance with the Town Plan) and did not meet its burden of production with respect to 10 V.S.A. § 6086(a)(1) (avoidance of undue air pollution). Both Moretown and the Neighbors have filed cross-appeals in both proceedings.

Appellant-Applicant Rivers is represented by James Caffry, Esq. and Christopher J. Nordle, Esq.; Cross-Appellant "Neighbors"[3] are represented by David L. Grayck, Esq. and

---

[1] This Corrected Decision is issued in connection with the granting of Neighbors' motion for clarification. See Entry Order dated January 18, 2008.

[2] There are also two other appeals pending before the Court that relate to the proposed Rivers Quarry: In re: Rivers Dev., LLC Underground Injection Control JO, Docket No. 183-8-07 Vtec and In re: Rivers Dev. LLC Indirect Discharge JO, Docket No. 248-11-06 Vtec. The pending motions addressed in this Decision were only filed in the two appeals cited above.

[3] "Neighbors" includes the following individuals to whom the District Environmental Commission granted individual party status in the Act 250 proceedings pursuant to 10 V.S.A. § 6086; these individuals have retained their party status in these proceedings, pursuant to V.R.E.C.P. 5(d)(2): Thomas Allen, Robert Dansker, Jack Byrne, Virginia Farley, Doug Hall, Cindy Hall, June Holden Life Estate, Rick Hungerford, Rita Larocca, Robert McMullin, Beverly McMullin, John Porter, Scott Sainsbury, Patricia Sainsbury, Sandy Porter, Benjamin Sanders, Denise

Zachary K. Griefen, Esq.; Cross-Appellant Arthur Hendrickson and Linda Hendrickson are united with the Neighbors, but are representing themselves pro se; Moretown is represented by Ronald Shems, Esq. and Geoffrey H. Hand, Esq.; and the Land Use Panel of the Natural Resources Board ("NRB"), appearing in the Act 250 proceeding as an Interested Person, is represented by Aaron Adler, Esq.

Rivers has moved for partial summary judgment on questions 3, 4 and 5 of its Statement of Questions in its appeal of the municipal determination. These Questions collectively inquire whether the August, 27, 2002 Moretown Town Plan allows on-site processing of stone at a quarry in the Agriculture-Residential District. Rivers has also moved to dismiss specific Questions in the Neighbors' Statement of Questions in the Act 250 appeal and has further requested that the Court direct Neighbors to clarify their remaining Questions. Both the Town and the Neighbors have filed oppositions to all motions by Rivers, and in their opposition to partial summary judgment, have raised the related issue of whether Rivers has a vested right to proceed under the March 7, 2000 Moretown Zoning Regulations. For the reasons expressed below, we grant Rivers's motion for partial summary judgment, we grant Rivers's motion for clarification, and we grant Rivers's motion to dismiss certain questions on appeal.

## Factual Background[4]

*A.)* *General History*

1. Rivers is the owner of an approximately ninety-three acre parcel of land located in the Town of Moretown along the northerly side of Route 100B, about two and a half miles from Moretown Village.

2. On May 17, 2004, Rivers submitted to the DRB a zoning and conditional use application and supporting materials for the construction of a rock processing quarry ("Quarry").[5]

---

Sanders, Karen Sharpwolf, Ruth Van Heuven, Martin Van Heuven, and Constance Van Heuven. This Court's July 3, 2007 Decision denied certain requests for additional party status, but did not disturb these Neighbors' pre-existing party status, as conferred by the District Commission.

[4] All facts are undisputed unless otherwise noted. For purposes of this motion only, we view the material facts in a light most favorable to the non-moving parties. V.R.C.P. 56(c). We are not yet at the stage of making specific factual findings. Thus, our recitations here should not be regarded as factual findings See Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14, 24, citing Fritzen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000)(mem.).

[5] Neighbors assert that the conditional use application, as filed on May 17, 2004, was incomplete for failure to address all adverse impacts from the project. This assertion is discussed in more detail below.

3. On October 18, 2005, Rivers submitted to the Commission an Act 250 land use permit application for its Quarry.

## B.) *Proposed Quarry Description*

4. Rivers's ninety-three acre parcel is presently wooded with a mixture of hard and soft woods and is improved only with internal woods roads. The Quarry footprint will encompass approximately seventeen acres of the parcel.

5. Quarry operations will include the clearing of vegetative cover, the stripping and storing of topsoil and overburden, drilling, blasting, excavating, stockpiling, loading, hauling, and processing of rock. There will not be onsite storage of fuel or blasting materials.[6]

6. The Quarry will have a maximum extraction rate of 75,000 cubic yards per year and will operate over an approximately thirty-three year period. It will be completed in six phases.

7. Rivers proposes to operate the Quarry from April 15 to December 15 each year, Monday through Friday, between 7:00 a.m. and 5 p.m., exclusive of state and federal holidays. Rivers pledges to limit blasting to Monday through Friday, between the hours of 10:00 a.m. and 4:00 p.m. Quarry employees will conduct maintenance activity at the site on Saturdays from 7:00 a.m. until noon. Rivers requests that off-season access to stockpiled materials be permitted, with the approval of the Department of Fish and Wildlife.

8. The Quarry will generate a maximum of fifty-four loaded dump trucks per day (i.e.: 108 one-way vehicle trips) and up to ten other vehicles (i.e.: twenty additional one-way vehicle trips for employees and other business invitees).[7]

9. Rivers proposes to operate the following equipment at the Quarry site: one hydraulic rock drill; one excavator; one bucket loader; one six by twenty foot triple deck screener; one yard/water truck; one backhoe; one crusher with a total capacity of one hundred cubic yards per hour; and other miscellaneous equipment as needed.

10. Quarry operations will generate noise, shock waves and vibrations from blasting and other quarry processes.

11. The closest point of the working Quarry will be 760 feet from Route 100B. Its access will be from Route 100B via an existing woods road, approximately 1,400 feet in length.[8] This

---

[6] Neighbors and Moretown assert that fuel and blasting materials will necessarily be stored on the property for the brief period from the time the materials enter the property, to the time they are used on the property.

[7] Moretown asserts that trucks not controlled by Rivers may result in additional vehicle traffic.

road will require improvements and grading in order to accommodate haul trucks. Significant ledge removal work is required on Route 100B in order to satisfy the Vermont Agency of Transportation sight distance requirements for trucks exiting the Quarry via its access road.

12. The Mad River flows on the southerly side of Route 100B throughout the area in which the Quarry is located. The parcels to the east and west of the Quarry are improved with single family residences. The parcel adjacent to the Quarry to the north is a large wooded tract.

13. Four horse farms are located in the vicinity of the Quarry, across Route 100B to the south. Several of the horse farms have indoor and outdoor arenas, riding trails and pastures, and provide riding, riding lessons and boarding. Two of the horse farms, owned by the Sainsbury and McMullin families, are adjacent to the Quarry parcel, with pastures on the southerly side of Route 100B.

14. The Quarry's reclamation plan does not return the site to original or natural contours, instead leaving the benched faces exposed. The stacked benches will leave an exposed rock face that will have a maximum height of 210 feet.[9]

*C.) Moretown DRB Zoning and Conditional Use Application*

15. The Zoning Regulations for the Town of Moretown ("Zoning Regulations") were adopted on March 7, 2000.[10] The proposed Quarry location is within the Agriculture-Residential Zoning District ("Ag-Res District"), as described in Zoning Regulations Table 2.3.

16. Moretown has a Town Plan which was drafted with the assistance of the Moretown Planning Commission and adopted by the Moretown Selectboard on August 27, 2002. The Town Plan also identifies the proposed Quarry site as being located within the Ag-Res District and adjacent to the Route 100B/Mad River Corridor, with view-shed and traffic impacts occurring inside the Corridor.[11]

---

[8] Rivers classifies the access to Route 100B as an "existing curb cut" but has not provided factual evidence to support this conclusion.

[9] A single bench level will be about fifteen feet in height; therefore, the maximum height of 210 feet of exposed face is approximately fourteen stacked benches. Rivers avers that the exposed rock faces in the quarry would be available for community recreation, such as a rock climbing school, subsequent to completion of the reclamation plan.

[10] The Zoning Regulations were further amended on July 21, 2003, although those amendments do not impact the material issues in these appeals.

[11] The Planning Commission studied this Route 100B/Mad River Corridor in 1999-2000 and concluded that most of its defining features are located within a broad corridor defined by a distance of 300 feet east and west of the 100 year floodplain. The Quarry is located beyond 300 feet from the 100 year floodplain, however, the view-shed and traffic impacts will occur inside this Corridor.

4

17. On May 3, 2004, prior to the submission of Rivers's conditional use permit application, the Moretown Selectboard considered, under new business, the adoption of interim zoning amendments and how those amendments could relate to a potential quarry on the Rivers's property. The Selectboard did not take any action on the proposed interim zoning amendments during this meeting and decided instead to table further discussion on the matter.

18. On May 17, 2004, Rivers submitted to the DRB its zoning and conditional use application and supporting materials for the construction of the Quarry.

19. Exhibits 2, 3(A), 3(B), 3(C), 3(D), 3(E), 3(F) and 3(G) of Rivers's conditional use application, as submitted on May 17, 2004, failed to identify, describe or analyze the impacts attributable to the haul road improvements or the Route 100B ledge removal work.

20. On June 15, 2004, the Moretown Selectboard issued a Notice of Public Hearing "for the purpose of discussing the proposal and adopting Interim Bylaws for Rock and Stone Quarrying" set for July 6, 2004. The Notice advised that the interim zoning amendments would "prohibit rock and stone quarrying in the Agriculture/Residential and Preserve Districts of the Town of Moretown."

21. On June 29, 2004, the Moretown DRB ruled Rivers's conditional use application, as submitted on May 17, 2004, to be complete for the purposes of giving adequate notice to the Board and other interested parties of its development proposal.

22. On August 2, 2004, Moretown adopted the proposed interim zoning amendments to Section 3.5(A) of the March 7, 2000 Regulations. Section 3.5(A) was amended such that only the removal of soil, sand or gravel may be allowed as a conditional use in the Ag-Res District.

23. Moretown's DRB denied Rivers's zoning and conditional use application on December 10, 2004, asserting undue adverse impacts on the Town's character, traffic, noise levels and water supplies.

24. Rivers appealed the DRB's decision to this Court, which was assigned Docket No. 7-1-05 Vtec. With its notice of appeal, Rivers filed a motion to put that appeal on inactive status, pending Rivers's application for an Act 250 permit to the District #5 Environmental Commission.

25. On April 8, 2005, Environmental Judge Meredith Wright granted Rivers's motion to place its DRB appeal on inactive status, pending filing and consideration of Rivers's application for an Act 250 permit.

5

*D.)      Act 250 Permit*

26.      On October 18, 2005, Rivers submitted an Act 250 Land Use Permit application to the District #5 Environmental Commission ("Commission") for its proposed Quarry.

27.      Rivers's Act 250 application was assigned Application #5W1455.  On January 19, 2007, the Commission issued its Findings of Fact, announcing that it had rendered positive findings on many of the relevant Act 250 criteria and sub-criteria, but also concluding that Rivers's proposal did not comply with 10 V.S.A. § 6086(a)(10)("town plan"), and did not meet its burden of production with respect to 10 V.S.A. § 6086(a)(1)("air pollution").  As a consequence of the Commission's factual findings, no Act 250 permit was issued for Rivers's proposed Quarry.  The Commission also denied Rivers's subsequent motion to alter the Commission's Findings of Fact.

28.      Rivers then appealed the Commission's determinations to this Court; that appeal was assigned Docket No. 68-3-07 Vtec.  Rivers then filed a motion to reactivate Docket No. 7-1-05 Vtec, and consolidate it with the newly filed Act 250 appeal (Docket No. 68-3-07 Vtec).  This Court granted Rivers's motion to reactivate and consolidate on July 3, 2007.

**Discussion**

As a preliminary matter, it is necessary to categorize the filings for these two consolidated appeals.  First, in its motion for partial summary judgment, Rivers asks whether the August, 27, 2002 Moretown Town Plan allows on-site processing of stone at a quarry in the Ag-Res District.  Moretown and the Neighbors opposed Rivers's motion, arguing that the Town Plan clearly and specifically prohibits the on-site processing of stone at a quarry in this District.  Additionally, the Neighbors raised a related issue of whether Rivers had a vested right to proceed under the March 7, 2000 Moretown Zoning Regulations.  We will respond to the vested right issue first because it determines which edition of the Zoning Regulations and Town Plan apply.  These issues address a small portion of the issues raised in the parties' statement of questions.

Summary judgment is appropriate "when there are no genuine issues of material fact and, viewing the evidence in a light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law."  In re Carter, 2004 VT 21, ¶ 6 (citation omitted); V.R.C.P. 56(c).

**Vested Rights**

In Vermont, zoning rights generally vest at the time a complete application is filed.  In re Jolley Associates, 2006 VT 132, ¶ 11 (citing Smith v. Winhall Planning Comm'n, 140 Vt. 178,

181-82 (1981)). This rule is also true in state land use (i.e.: Act 250) permit applications. In re: Burlington Broadcasters, Inc. d/b/a WIZN, et. al., #4C1004R-EB at 5–6 (Vt. Envtl. Bd., Nov. 25, 2003).[12] Thus, an applicant's rights normally vest under the zoning ordinance or state land use law in effect at the time its application is filed. Smith, 140 Vt. at 181–82; Molgano, 163 Vt. 25, 32–33 (1994).

In adopting this minority rule, the Vermont Supreme Court explained that it particularly fit a situation "where no amendment is pending at the time of the application"[13] and that under this vested rights rule, the zoning proceedings must be "validly brought and pursued in good faith." In re Handy, 171 Vt. 336, ¶ 22 (2000) (citing Smith, 140 Vt. at 182).

Here, Rivers filed its conditional use application on May 17, 2004, which is nearly one month before Moretown sent out its Notice of Public Hearing regarding the interim bylaw, and nearly two and a half months before Moretown adopted the interim zoning amendment to Zoning Regulations Section 3.5(A). Therefore, unless it can be shown that Rivers did not act in "good faith", or, in the alternative, that a relevant zoning amendment was pending at the time of their application filing, Rivers's right to have their application reviewed under the March 7, 2000 Zoning Regulations vested.

"The 'good faith' standard is specific and ascertainable, having been adopted and described in numerous decisions from other states." In re Handy, 171 Vt. 336, ¶ 23 (2000) (citation omitted). The "good faith" standard requires a showing by the applicant that it did not engage in a rush to file its application by "submitting a general and sketchy . . . application solely to protect itself against an amendment . . .." In re Taft Corners, 171 Vt. 135, 142 (2000). In order to assess whether Rivers filed a complete application in good faith, we must analyze the timing and content of the application.

A conditional use application for a quarry of this magnitude requires extensive expert analysis, reports and written conclusions and is not conducive to ad hoc submissions. Rivers's lengthy application reflects this extension of energy and analysis. The fact that the DRB classified Rivers's conditional use application "complete"[14] is not dispositive for our de novo

---

[12] See also In re: Molgano, 163 Vt. 25, 33 (1994) and In re: Taft Corners Assocs., 160 Vt. 583, 593–4 (1994).

[13] Smith, 140 Vt. at 182.

[14] We are not aware of any party preserving for review in this municipal appeal the specific DRB conclusion that Rivers' application was in a sufficient form to deem it complete as of May 17, 2004. We note, however, that an application may be deemed complete at the beginning of a municipal proceeding and may none-the-less be deemed at the merits hearing to not have sufficient evidentiary support to be in conformance with the Zoning Regulations.

analysis, though it is a factor in support of Rivers's claim that it acted in good faith.[15] Conversely, Rivers's likely knowledge of the interim bylaw is not germane to its intent for, and timing of, filing.

Neighbors argue that Rivers's application is incomplete because impacts from the haul road improvements and sight-line ledge removal are not included in the application. However, these deficiencies are not representative of a "general and sketchy application" as described in Taft, 171 Vt. at 142. Here, the haul road improvements and ledge removal issues were addressed in more detail during the DRB proceedings and may be attended to with subsequent expert analysis in our de novo review. In light of all the above, we conclude that Rivers acted in good faith by filing its complete application on May 17, 2004.

We also note that it has not been shown that a zoning amendment had been adopted at the time of Rivers's filing. In response to the subjectiveness inherent in a "good faith" analysis, the Vermont Legislature adopted a "once proposed" bright-line rule. Under 24 V.S.A. § 4449(d), which reads in pertinent part:

> If a public notice for a first public hearing . . . is issued . . . by the local legislative body with respect to the adoption or amendment of a bylaw, or an amendment to an ordinance adopted under prior enabling laws, the administrative officer, for a period of 150 days following that notice, shall review any new application filed after the date of the notice under the proposed bylaw or amendment and applicable existing bylaws and ordinances.

This "once proposed" bright-line rule acts as a moratorium for applications filed while a bylaw is pending. If the bylaw is adopted within 150 days of the public notice, then the application must conform to the newly proposed bylaws. Conversely, if the bylaw is not adopted within 150 days, the applicant is covered by the previous regulations.[16]

In order for an interim bylaw to be pending, there must first be duly provided public notice. In this case, Rivers's conditional use application was filed on May 17, 2004, and Moretown issued its Notice of Public Hearing "for the purpose of discussing the proposal and adopting of Interim Bylaws for Rock and Stone Quarrying" on June 15, 2004. Thus, because the

---

[15] On June 29, 2004, the Moretown DRB ruled Rivers's conditional use application, as submitted on May 17, 2004, complete for the purposes of giving adequate notice to the Board, and other interested parties, of its development proposal.

[16] In this case, the interim bylaw was adopted on August 2, 2004, which was within 150 days of the June 15, 2004 Public Notice. However, these dates are not germane to the issue because Rivers filed its application prior to the Public Notice.

Public Notice was issued subsequent to the good faith filing of Rivers's complete application, Rivers has a vested right to proceed under the March 7, 2000 Zoning Regulations.

## On-Site Processing of Stone in the Moretown Ag-Res District

Rivers has moved for partial summary judgment on the specific issue of whether the August, 27, 2002 Moretown Town Plan prohibits on-site processing of stone at a quarry in the Ag-Res District. Thus, we are not addressing the more specific question of whether its Quarry project complies with the Moretown Town Plan; we are asked here only to determine whether an Ag-Res District quarry is permitted under the Town Plan. Contrary to Moretown's assertions, this issue as framed is not advisory or over-broad and presents a live controversy to this Court.[17]

Act 250 places the burden on an applicant to demonstrate that its proposed project "[i]s in conformance with any duly adopted local or regional plan . . . under chapter 117 of Title 24." 10 V.S.A. § 6086(a)(10). Several key principles are established in our jurisprudence, and that of the former Environmental Board,[18] that test whether a project complies with a local plan. In re Cetrangolo and DeFelice, Docket No. 66-3-06 Vtec (Vt. Envtl. Ct. April 11, 2007), (quoting In re John A. Russell Corp., 2003 VT 93 at ¶16–24). Conformity requires a "'specific policy' set forth in the plan" to act as a standard against which a Court can gauge compliance. Id. The 'specific policy' must be stated "in language that 'is clear and unqualified, and creates no ambiguity.'" Russell, 2003 VT 93 at ¶16, (quoting In re MBL Assocs., 166 Vt. 606, 607 (1997) (mem.)). Thus, our first determination is whether the language in the Town Plan is mandatory or aspirational. In re John J. Flynn Estate and Keystone Dev. Corp., #4C0790-2-EB, Findings of Fact, Concl. of Law, and Order, at 27–28 (Vt. Envtl. Bd., May 4, 2004). Aspirational language is, in effect, a statement of a town's desires. Without more specificity, such language cannot be read as restricting specific activities.

Although importance must be placed upon the expression of town goals, aspirations alone cannot be the basis for a permit denial. If, however, we find the language within a town plan

---

[17] See Brod v. Agency of Natural Resources, 2007 VT 87 at ¶ 8; Agency of Natural Resources v. U.S. Fire Ins. Co., 173 Vt. 302, 306 (2001) ("Vermont Courts are vested with subject matter jurisdiction only over actual cases or controversies involving litigants with adverse interests."); Hinesburg Sand & Gravel Co. v. State, 166 Vt. 337, 341 (1997) ("To have a case or controversy subject to the jurisdiction of the court, the plaintiffs must have standing.")

[18] The former Environmental Board, predecessor to the present Land Use Panel of the Vermont Natural Resources Board, was once charged with adjudicating Act 250 appeals. We are directed under 10 V.S.A. § 8504(m) to give the same weight and consideration to the decisions of the former Environmental Board as we do to prior decisions of this Court.

mandatory, then we move on to the next step of the analysis. In this second step, we must determine whether the relevant provisions of a town plan are specific, or conversely, whether they are "general in nature or ambiguous." Id. at 28. A town plan provision is considered to "evince a specific policy" if it "(a) pertains to the area or district in which the project is located; (b) is intended to guide or proscribe conduct or land use within [that area or district]; and (c) is sufficiently clear to guide the conduct of an average person, using common sense and understanding." Id.; In re Times and Seasons, LLC and Hubert K. Benoit, #3W0839-2-EB, Findings of Fact, Concl. of Law, and Order (Altered), at 59–60 (Vt. Envtl. Bd., Nov. 4, 2005).

If the Court[19] "finds applicable provisions of the town plan to be ambiguous . . . [then], for interpretive purposes, [we] shall consider [the municipal] bylaws, but only to the extent that they implement and are consistent with those provisions, and need not consider other evidence." 10 V.S.A. § 6086(a)(10). While "broad policy statements phrased as 'non-regulatory abstractions'" are not to be given the "legal force of zoning laws," Russell, 2003 VT 93 at ¶16 (quoting In re Molgano, 163 Vt. 25, 31 (1994)), zoning bylaws are "designed to implement the town plan, and may provide meaning where the plan is ambiguous." In re Kisiel, 172 Vt. 124, 130 (2000); 10 V.S.A. § 6086(a)(10). Therefore, ambiguity in the Town Plan allows this Court to use the bylaws as an additional interpretative resource.

Analysis of the Moretown Town Plan begins with determining which provisions of the Plan are to be used to test compliance under Criteria 10.[20] The Town Plan directs that conformance should be evaluated with reference to the policies listed at the end of each chapter of the Plan. Moretown Town Plan at 72. Our Court is familiar with this type of municipal language, having ruled on a similar issue in Cetrangolo, Docket No. 66-3-06 Vtec (Vt. Envtl. Ct. April 11, 2007). In Cetrangolo, we looked both to the goals which precede the policies and to the policies themselves, and then applied the John J. Flynn Estate analysis. We found that the policies containing the word "should" applied to the area in which the project was located, were intended to guide conduct, and were sufficiently clear to guide the average person. Cetrangolo at 11. However, because the policies began with "should" they were not mandatory and required an examination of the applicable zoning regulations to resolve the ambiguity. Id. The zoning

---

[19] In an appeal pursuant to 10 V.S.A. § 8504(h).
[20] 10 V.S.A. § 6086(a)(10)

10

regulations lacked an applicable review mechanism and a specific mandatory regulation governing the project, so we concluded that these policies were not mandatory. Id. at 12.

In the Moretown Town Plan, Natural and Cultural Resources are discussed in Chapter Four. At the end of Chapter Four, Policy Seven states that it is the policy of Moretown to "[p]rovide for the responsible extraction of renewable and finite natural resources for municipal and commercial purposes." Moretown Town Plan at 34. Unlike the aspirational language in Cetrangolo, we regard the use in Policy Seven of the phrase "provide for" as mandatory.[21] Therefore, we move to the second step of our analysis and evaluate whether the provision is specific or general. Using the three part John J. Flynn Estate analysis, we find the policy, standing alone, is not specific because although it: (a) pertains to a specific location in that earth resources are site specific; and (b) is intended to guide conduct in that it requires responsible extraction of resources for municipal and commercial purposes; it is not (c) sufficiently clear to guide the average person because responsible extraction is a general term of art.

Policy Seven must be read along with the related "Gravel Resources" section in Chapter Four to determine a common understanding for "responsible extraction". In this related section, the Town Plan provides that extraction of gravel resources would require that impacts "need to be considered prior to development . . . [and] avoided or mitigated through careful site planning, operation and reclamation." Moretown Town Plan at 23. The term "gravel resources" is ambiguous and is not defined in the Town Plan.[22] This ambiguity may be resolved by referring to the Zoning Regulations pursuant to 10 V.S.A. § 6086(a)(10). Finally, in the "Tasks and Strategies" section of chapter 4, it is shown to be the DRB's role to ". . . ensure that the extraction of gravel and other mineral resources does not permanently scar the landscape, adversely impact ground or surface waters, or unreasonably impact adjacent neighbors." Town Plan at 35. Therefore, we do not regard the Natural Resources chapter of the Moretown Town Plan as prohibiting extraction of earth materials. In fact, it encourages such extraction, when adverse impacts can be carefully avoided or mitigated.

---

[21] "Provide for" is synonymous with "to make available" and "to furnish" and is an unequivocal command. See Webster's II New College Dictionary 912 (3rd ed. 2005).

[22] "Gravel Resources" may be referring to naturally occurring smooth rocks that are naturally less than one inch diameter, or conversely, it may be referring to crushed stone.

Although quarrying is a contemplated use, the Town Plan lacks a clear standard of review to provide guidance on the "responsible extraction" and contains an ambiguous definition of "gravel resources".

In the "purpose" section of the Moretown Town Plan, the Town has expressed its desire that "[t]he policies set forth in this plan address a wide range of topics, and are designed to serve as the town's unambiguous position during the Act 250 and other review processes." Moretown Town Plan at 2. Although the policies are designed to serve as the Town's unambiguous position, they are sometimes written with ambiguity. Therefore, in Moretown policies where clarity is lacking, this Court will follow the direction of 10 V.S.A § 6086(a)(10) and will rely on the applicable Zoning Regulations for interpretation.

In order to resolve any lingering ambiguity contained in the Chapter 4 policy for "responsible extraction" of "gravel resources", the March 7, 2000 Zoning Regulations may be used as an interpretive resource.[23] The Zoning Regulations list the extraction of earth resources as a conditional use in the Ag-Res District that required a conditional use permit. Zoning Regulations Table 2.3. Extraction of earth resources is subject to specific use provisions found in Section 3.5 of the Zoning Regulations. Section 3.5(A) states that "[t]he removal of . . . stone . . . may be permitted in designated zoning districts subject to conditional use review . . .." Zoning Regulations at 11. Section 3.5(D)(5) allows the DRB to consider and impose conditions relative to "hours of operation for blasting, trucking and processing operations" and Section 3.5(D)(6) discusses ". . . blasting, excavating or *crushing* activities . . .." Id. (emphasis added). Because the Zoning Regulations contain a mandatory provision with a sufficiently specific review mechanism under the DRB, we conclude that the on-site processing of stone at a quarry in the Ag-Res District is not prohibited. This regulatory language leads us to conclude that quarry activities are not prohibited under the Town Plan, and that the design, use and activities on a quarry site are subject to the review and conditional approval by the DRB.[24]

In its opposition to partial summary judgment, Moretown admits that it "would not dispute the notion that some gravel extraction and 'minor quarrying' including some crushing

---

[23] 10 V.S.A. § 6086(a)(10). As discussed in the section entitled "vested rights", Rivers has a vested right to proceed under the March 7, 2000 Zoning Regulations.

[24] The Quarry's scope, size, activities, and reclamation are subject to the DRB's authority to ensure that it is completed responsibly, does not scar the landscape, adversely impact ground or surface waters or unreasonably impact neighbors. These are issues of fact that are beyond the scope of this motion and will properly be addressed at trial.

and stockpiling may be allowed in the Agriculture-Residential district subject to conditional use and the other zoning ordinance provisions that implement the Town Plan." Moretown's Partial Summary Judgment Opposition, at 6-7. Moretown continued on to distinguish "major" and "minor" quarrying, and then "light" from "heavy" industry. However, for purposes of this narrow issue on prohibited uses, these concessions by the Town bolster our conclusion that the Town Plan cannot be read as prohibiting any quarry activities in the Ag-res District.

Cross-Appellant Moretown also argues that the Town Plan identified the Route 100B/Mad River corridor as an area of "critical importance" to the community. The Town relies on Policy Five in Chapter Seven, which states that "[d]evelopment within the Route 100B/Mad River corridor should be compatible with the existing character of that area." Moretown Town Plan at 31, 68. We do not find it necessary to analyze conformance with the Town Plan for Policy Five because Cross-Appellant Moretown has not demonstrated to this Court that the Quarry is located inside the delineated corridor.[25] While the Quarry view-shed and traffic may impact the Route 100B/Mad River corridor, the Quarry footprint is located outside the corridor. It is not necessary to continue the conformance analysis, except to state that the Court, in our de novo review, is aware of the possible view-shed and traffic impacts on the Route 100B/Mad River corridor.

We also note that the quoted language from Policy Five of Chapter Seven uses the term "should" and not "shall." We therefore conclude that such language, without more definition, does not give adequate notice of restrictions and thus can only be regarded as permissive or advisory.

Based on the foregoing, Rivers's motion for partial summary judgment is GRANTED. We find that the August, 27, 2002 Moretown Town Plan does not specifically prohibit on-site processing of stone at a quarry in the Ag-Res District. Whether this specific Quarry complies with the applicable use provisions remains at issue for trial.

**Motion to Clarify**

Rivers has moved to clarify Questions 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 17, and 20 from the Neighbors' Statement of Questions and Questions 1, 2, 3, 4, and 5, from the Town's

---

[25] Moretown asserts that the Quarry is inside the Route 100B/Mad River corridor but fails to provide evidence supporting this. It is undisputed that the Quarry is located beyond 300 feet from the 100 year floodplain of the Mad River.

Statement of Questions. Both sets of Question are from the Act 250 appeal (i.e.: Docket No. 68-3-07 Vtec).

We regard a statement of questions filed by an appellant in an Environmental Court proceeding as being similar to a complaint in a civil case.[26] Like a complaint, the statement of questions should be a short, concise and plain statement that will establish the scope of the appeal, and ultimately, the scope of the issues for trial. "The other parties are entitled to a statement of questions that is not vague or ambiguous, but is sufficiently definite so that they are able to know what issues to prepare for trial." In re: Unified Buddhist Church, Inc., Indirect Discharge Permit, Docket No. 253-10-06 Vtec, slip. op. at 5 (Vt. Envtl. Ct., May 11, 2007). Here, "the applicant has the burden of coming forward with evidence to show that the application meets the criteria for approval" and is therefore "entitled to understand in what respect [a cross-] appellant believes that the application fails to meet such criteria." Id.

We find the present questions vague and in need of clarification. For example, Neighbors' Question 1 asks whether the proposed quarry and its operations complies with 10 V.S.A. § 6086(a)(1). Section 6086(a)(1) requires proof that a project "will not result in undue water or air pollution." 10 V.S.A. § 6086(a)(1). Section 6086(a)(1) potentially implicates all of the standards promulgated by the Agency of Natural Resources, including the Vermont Water Quality Standards, as well as the standards promulgated by other state or federal agencies. Rivers and the other parties are entitled to a more specific statement of which standards are alleged by Cross-Appellants as not being met by the application at issue in this appeal.

Because the remaining eighteen questions are written in a nearly identical format, addressing each Act 250 criteria, it is unnecessary to repeat this analysis. It is sufficient to say that we find Neighbors' Questions 1-14, 17 and 20 and Moretown's Questions 1-5 vague and in need of clarification. We would find the challenged Questions clearer and less vague if they gave notice, in a short, concise and plain manner, of what specific components or characteristics of the Rivers's proposed Quarry should lead this Court to conclude that the Quarry does not comply with the specific statutory criteria referenced in each Question. Because the Questions do not, we conclude that they are impermissibly vague.

We reject Moretown's assertion that Rivers's motion is time-barred because it was not addressed at the initial conference. V.R.E.C.P. 2(d)(2)(iv). While Rule 2 says that we must

---

[26] V.R.C.P. 8(a)(1)

14

address the clarification of statement of questions at the initial conference, it does not say that is the only time we may do so. We note that it is more appropriate, under Rule 2, to address this in the initial conference, but in this case, clarification is appropriate now.

Cross-Appellants have argued that clarification is duplicative and unnecessary because discovery is occurring. We find this assertion lacks merit because discovery establishes the facts in evidence while a statement of questions sets the scope of the appeal. The latter gives a preview of the issues for trial, not just as notice to the other parties, but also as notice to this Court. These two different stages of litigation are not mutually exclusive. It is beneficial for both parties to know specifically what issues are in dispute.

In Neighbors' Reply and Opposition to Rivers's Motion, significant clarification is, in fact, presented. However, while helpful, we cannot accept that informal amendment to the challenged Questions as satisfying the requirements of V.R.E.C.P. 5(f). Neighbors and Moretown must file an amended statement of questions providing additional clarification.

Based on the foregoing, Rivers's motion to clarify Neighbors' Statement of Questions 1-14, 17, and 20 and Moretown's Statement of Questions 1-5 is GRANTED. Neighbors and Moretown should immediately begin redrafting clearer and less vague Questions and should be prepared to discuss the deadline for filing the same at the in-person hearing that the Court has already scheduled for January 16th.

**Motion to Dismiss Questions**

Rivers has moved to dismiss Questions 15, 16, 18 and 19 of the Neighbors Statement of Questions in the Act 250 appeal. These Questions pertain to various criteria under Act 250: Question 15 centers on 10 V.S.A. § 6086(a)(6)("educational facilities"), Question 16 centers on 10 V.S.A. § 6086(a)(7)("governmental services"), Question 18 centers on § 6086(a)(9)(A)("town growth"), and Question 19 centers on § 6086(a)(9)(H)("scattered development").

In our July 3, 2007 Decision on Motions Related to Party Status & Consolidation, we granted a portion of Rivers's Motion for Summary Judgment and found that none of the Neighbors have party status under 10 V.S.A. § 6086(a)(6); (a)(7); (a)(9)(A); or (a)(9)(H). Only those now-dismissed parties preserved these issues for our review in this Act 250 appeal. If and until that dismissal of party status is reversed, the remaining neighbors do not have standing to raise those issues in this appeal. We are only authorized to take evidence and rule on issues preserved on appeal. 10 V.S.A. § 8504(d)(1). Additionally, under 10 V.S.A. § 8504(d)(1), a

"person may only appeal those issues under the criteria with respect to which the person was granted party status [by the District Commission]." None of the remaining Neighbors were granted party status under these criteria by the District Commission in the first instance, or by this Court on appeal. Therefore, the Questions raised by the remaining Neighbors under these criteria are appropriately dismissed.

Although the Commission denied the Neighbors party status under these criteria, the Commission granted Moretown party status under these criteria. Therefore, there will be a full opportunity for Moretown to raise these issues at trial.

Based on the foregoing, Rivers's motion to dismiss Neighbors' questions 15, 16, 18, and 19 is GRANTED.

## Conclusion

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant Rivers's motion for partial summary judgment is **GRANTED**, Appellant Rivers's motion for clarification of statements of questions is **GRANTED**, and Appellant Rivers's motion to dismiss questions is **GRANTED**.

Done at Berlin, Vermont, as of this 8th day of January, 2008.

_____
Thomas S. Durkin, Environmental Judge