**STATE OF VERMONT**
**SUPERIOR COURT — ENVIRONMENTAL DIVISION**

|  |  |  |
|---|---|---|
| In re Union Bank (Jeffersonville) | { | Docket No. 7-1-12 Vtec |
| (Act 250 Application #5L0468-7) | { | (Appeal from District 5 Envtl. Comm.) |
|  | { |  |

**Decision on Cross-Motions for Summary Judgment**

On March 25, 2011, Union Bank applied for an Act 250 permit from the District 5 Environmental Commission ("the Commission") for the construction and operation of a bank facility in the Village of Jeffersonville, Vermont ("the Project"). On October 26, 2011, the Commission issued its Findings of Fact, Conclusions of Law, and Order, which concluded that the Project as proposed complies with all applicable Act 250 criteria except Criterion 10 and denied Union Bank's application on the grounds that the Project did not conform to the Village of Jeffersonville Municipal Plan ("the Plan"). Union Bank appealed the Commission's determination to this Court. The Village of Jeffersonville ("the Village") filed an appearance and moved for summary judgment, arguing that the Project does not conform to the Plan and therefore does not comply with Act 250 Criterion 10 as a matter of law. Jean Jenkauskas, an additional party to this appeal, joined the Village's motion for summary judgment. Union Bank filed a cross-motion for summary judgment on the Criterion 10 issue.

**Factual Background**

For the purposes of analyzing the pending summary judgment motions, we consider the following material facts, all of which we understand to be undisputed, unless otherwise noted below:

1.	On March 25, 2011, Union Bank filed an application for an Act 250 permit to construct and operate a bank facility on a site at the intersection of Vermont Routes 15 and 108 in the Village, a municipal entity within the Town of Cambridge, Vermont ("the Town").

2.	The Project tract is generally, although not entirely, situated within the 100-year floodplain of the confluence of the Brewster and Lamoille Rivers, as designated by the Federal Emergency Management Agency ("FEMA") mapped Special Flood Hazard Area.

3.	The Project would be located on a portion of the former Bell-Gates Lumber yard property ("the Bell-Gates site").

4.     The Village adopted Flood Hazard Area Zoning Bylaws on April 11, 1994 ("the 1994 Bylaws"); those Bylaws were in effect on March 25, 2011 when Union Bank submitted both of its applications.

5.     The Village adopted its Municipal Plan on October 12, 2009.

6.     The Village replaced the Flood Hazard Area Zoning Bylaws by adopting the Inundation Hazard Area Bylaws on July 6, 2011 ("the 2011 Bylaws").

## Discussion

The Parties raise three similar issues in the pending motions: first, whether the Plan language evidences a mandatory policy prohibiting certain new development in the flood hazard areas; second, if some Plan provisions are mandatory, whether they are clear and unambiguous in light of other Plan provisions; and finally, if there is ambiguity, whether the 1994 or the 2011 Bylaws should be used to interpret the Plan.

The Village argues first that the Plan language evidences a mandatory policy against any new commercial development in the flood hazard areas. The Village also argues that the provisions are clear and unambiguous in the application of that policy to the flood hazard area, including the Bell-Gates site. Finally, the Village argues that the 2011 Bylaws should be used to interpret the Plan because they implement the provisions of the Plan and considering them is fair because the proposal to adopt of the 2011 Bylaws was noticed prior to Union Bank's completed Act 250 permit application.

Union Bank argues that the Plan language is merely aspirational and not mandatory. In the alternative, it argues that the Plan is ambiguous because the Plan specifically discusses future mixed-use development on the Bell-Gates site. Finally, Union Bank argues that the 1994 Bylaws must be used to interpret the Plan because its rights under those Bylaws vested at the time it filed a  completed municipal application.

### Summary Judgment Standard

Vermont Rule of Civil Procedure 56 provides the standard for deciding motions for summary judgment. The court will grant summary judgment to a moving party only if that party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). When considering cross-motions for summary judgment, the court looks at each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v.

<u>Fairpoint Commc'ns</u>, 2009 VT 59, ¶ 5, 186 Vt. 332.  The court also accept as true all factual allegations made in opposition to a motion for summary judgment, so long as they are supported by "specific citations to particular parts of materials in the record."  V.R.C.P. 56(c)(1)(A).  Both parties have submitted statements of undisputed material facts.

**Act 250 Criterion 10 Standards**

The sole legal issue raised in Applicant's appeal and this part of the pending motions is whether the Project conforms to the Plan as required by Act 250 Criterion 10.  10 V.S.A. § 6086(a)(10).  The burden of proof under Criterion 10 is on the applicant to show conformance. 10 V.S.A. § 6088.  The Vermont Supreme Court has, however, cautioned against denying an Act 250 permit based on nonconformance with "nonregulatory abstractions" in a municipal or regional plan.  <u>In re Molgano</u>, 163 Vt. 25, 31 (1994).

A determination of nonconformity with a municipal or regional plan requires two elements.  First, a determination must be made that the relevant plan provisions are mandatory in nature and not merely aspirational.  <u>In re Rivers Dev., LLC</u>, Nos. 7-1-05 Vtec and 68-3-07 Vtec, slip op. at 9 (Vt. Envtl. Ct. Jan. 8, 2008) (Durkin, J.).  If the plan language is intended only to establish broad goals and not mandatory standards, the inquiry ends and a project cannot be denied under Criterion 10, based upon that language alone.  Second, a finding of nonconformity must be "based on a 'specific policy' set forth in the plan . . . and stated in language that 'is clear and unqualified, and creates no ambiguity.'"  <u>In re John A. Russell Corp.</u>, 2003 VT 93, ¶ 16, 176 Vt. 520 (quoting <u>In re Green Peak Estates</u>, 154 Vt. 363, 369 (1990); <u>In re MLB Assocs.</u>, 166 Vt. 606, 607 (1997) (mem.) (internal citations omitted)).  So, even if the plan language is mandatory it must also contain objective and unambiguous standards.  Ambiguity alone, however, will not render plan language unenforceable.

Where provisions of a plan are ambiguous, Act 250 dictates that the district commission, and thus this Court during a de novo review, "shall consider bylaws, but only to the extent that they implement and are consistent with those provisions, and need not consider any other evidence."  10 V.S.A. § 6086(a)(10).  Generally, the bylaws in effect at the time of the filing of a proper application will control.  <u>Molgano</u>, 163 Vt. at 32 (citing <u>Smith v. Winhall Planning Comm'n</u>, 140 Vt. 178, 181-82 (1981)).  If a municipal zoning permit application predates an Act 250 application, the bylaws in effect at the time of the municipal application will also apply in the Criterion 10 analysis.  <u>Id</u>. at 33.  Where there are no applicable zoning bylaws, the Court

must "construe the plan as best it can, based on various rules of construction or supporting evidence of municipal legislative intent." Re: Times and Seasons, LLC and Hubert K. Benoit, No. #3W0839-2-EB, Findings of Fact, Concl. of Law, and Order (Altered), at 60 (Vt. Envtl. Bd. Nov. 4, 2005).

**Does the Plan Contain Mandatory Policies or Mere Guidance?**

In the Water Resources subchapter, the Plan discusses development in "Flood Hazard areas." The Plan states:

> Floodplains are considered unsuitable for development for several reasons: potential danger to life and property, loss of flood water storage, effects on channel capacity and down stream water tables. Jeffersonville residents are strongly encouraged not to develop in the flood hazard areas as they risk significant financial loss if a flood occurs.

Plan at 20. The "Goals, Policies, & Recommendation" section of the Plan describes the following goal: "To protect the health, safety and welfare of the residents of Jeffersonville by limiting development in flood hazard areas to agriculture, recreation, and open space." Id. at 22. Under "Policies" the Plan states, "No development should occur within a flood hazard area" and "Agriculture, recreation fields, parks, and open space are all appropriate uses of flood hazard areas." Id. Also, in describing the Flood Hazard Overlay District (also called the Flood Hazard Area District) the Plan states, "Flood hazard areas offer excellent opportunities to locate recreational, open space, and other uses which do not require the placement of structures or fill. This area is not suited for other uses due to the risk of frequent flooding." Id. at 57.

In deciding whether these provisions evidence mandatory policies it is important to consider the nature of town and regional plans. As the Environmental Board noted,

> Most town plans and regional plans are not written like zoning bylaws. They frequently do not contain words such as "prohibited" or phrases such as "shall not be allowed." But this does not mean that they are legally meaningless. Town and regional plans by their very nature, as the Board has recognized, are aspirational. . . . But despite the recognition that town and regional plans are "abstract and advisory," Act 250 requires that projects comply with a "local or regional plan," if one exists. The Board is therefore obliged by the language of the law itself to give regulatory effect to a document which is often not written in regulatory language.

Re: Mclean Enters. Corp., No. 2S1147-1-EB, at 80 (Vt. Envtl. Bd. Nov. 24, 2004) (citations omitted). Viewed this way, we conclude that the Plan language amounts to more than mere guidance and evidences a mandatory policy of prohibiting some types of new development in

-4-

Flood Hazard areas. Specifically, the Plan "limits" development in flood hazard areas to agriculture, recreation, or open space uses, indicating that other uses are prohibited. The Plan states that "No development should occur within a flood hazard area." Plan at 22 (emphasis added). While "should" is often interpreted as non-mandatory, when combined with the phrase "no development," as it is here, and within the context of the other Plan provisions, the language is properly viewed as more than guidance. We cannot hold as a matter of law, as Union Bank asks us to, that these provisions are legally meaningless and not intended to have some regulatory effect.

### Is the Plan Clear, Specific, and Concrete or Ambiguous?

To the extent that the Village argues that the Plan clearly and unambiguously prohibits Union Bank from building a new bank on its property, we likewise cannot agree. Even where certain provisions of a plan evidence "specific and concrete expression of the plan's policy," a plan may still be ambiguous where other parts of the plan "are far less specific or definitive." In re Kisiel, 172 Vt. 124, 142 (2000) (finding town plan ambiguous despite clear and concrete policy where there were no specific standards for enforcement). When a plan contains inconsistent or conflicting provisions it may be ambiguous as applied to a specific project.

The court cannot ignore the Plan provisions that specifically mention the parcel at issue. The Plan's Economic Development section states, "The old Bell-Gates Lumber site is an excellent area for some type of mixed use redevelopment. Although the loss of this industry was a blow to the local economy, the site now provides a unique opportunity for Jeffersonville to grow and increase the overall vibrancy of the community." Plan at 31. It is undisputed that the majority of this parcel is within the Flood Hazard Area. The Village argues that there is no inconsistency because some portion of the Bell-Gates site is outside of that area. This interpretation, however, does not clearly and unambiguously follow from the Plan language such that an owner of the Bell-Gates site is on notice of the uses that are either permitted or prohibited on the site. See In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 18 (Vt. Super. Ct. Envtl. Div. Jul. 2, 2010) (Durkin, J.) ("The rationale for [a policy against ambiguity] when considering a project's conformance with a town or regional plan is rooted in the necessary understanding that land use regulations must provide sufficient notice to a property owner of the standards by which her land use proposal will be judged.").

Furthermore, the court cannot say as a matter of law that the mapped Flood Hazard Area itself is unambiguous. The Plan states that the land use designations, including the Flood Hazard Area Overlay, "are non-regulatory and will not affect the ability of a property owner to use his or her land. Only zoning or subdivision regulation could have that effect." Plan at 55. This does not put owners of land in the Flood Hazard Area Overlay on notice that new commercial development is prohibited on their property. Given these conflicting provisions, we cannot say that the Plan unambiguously prohibits new commercial development on the Bell-Gates site. Having found ambiguity in the Plan's application to this particular parcel, the statute directs the court to consider any relevant zoning bylaws.

**Can the Plan be Interpreted using the Village of Jeffersonville Bylaws?**

The only zoning bylaws in effect at or after the time when the pending application was filed are the Village of Jeffersonville Flood Hazard Area Zoning Bylaws ("the 1994 Bylaws") and the amended version of those Bylaws, entitled the Inundation Hazard Area Bylaws ("the 2011 Bylaws"). The Village argues that this Court should use the newer 2011 Bylaws to interpret the Plan; Union Bank argues that the 1994 Bylaws apply. However, under the unique facts of this case, the Court concludes that it cannot consider either.

The court cannot use the 2011 Bylaws to interpret the Plan because they were not in effect at the time of Union Bank's application for both the municipal and Act 250 permits. The Vermont Supreme Court has held that a town may not "do in the Act 250 process what they could not do otherwise, i.e., apply changes in zoning laws retroactively." Molgano, 163 Vt. at 32–33. It is undisputed that the 1994 Bylaws, rather than the 2011 Bylaws, govern Union Bank's municipal application. Thus, because the 1994 Bylaws govern the project at the municipal level, they would generally be used in the Criterion 10 analysis.

The language of the statute, however, does not support using the 1994 Bylaws, either. In interpreting a municipal or regional plan, Criterion 10 directs the District Environmental Commission, and therefore this Court on de novo review, to "consider bylaws, but only to the extent that they implement and are consistent with those [Plan] provisions. . . ." 10 V.S.A. § 6086(a)(10) (emphasis added). As the Plan was adopted in 2009, fifteen years after the adoption of the 1994 Bylaws, the Court cannot conclude that the 1994 Bylaws implement and are consistent with the Plan. The Vermont Supreme Court's decision in John A. Russell Corp. does not change this analysis. There, the Court looked to zoning bylaws that predated the

applicable municipal plan only because of "unique circumstances." <u>In re John A. Russell Corp.</u>, 2003 VT 93, ¶ 21, 176 Vt. 520. In that case, the citizens of the town voted against adopting new bylaws evidencing the intent that the old bylaws continue to govern the municipal plan. <u>Id</u>. In the absence of such unique circumstances and given the clear language of the statute, this Court cannot use the 1994 Bylaws to interpret the Plan.

Absent any zoning bylaws to aid our interpretation of the Jeffersonville Plan, the Court is left to "construe the plan as best it can, based on various rules of construction or supporting evidence of municipal legislative intent." <u>Re: Times and Seasons, LLC and Hubert K. Benoit</u>, No. #3W0839-2-EB, Findings of Fact, Concl. of Law, and Order (Altered), at 60. While statutory construction is generally a question of law, resolution on summary judgment is inappropriate here. The Court finds that further development of the facts at trial is the most appropriate way to resolve this ambiguity and apply the Plan to the proposed development.[1] See <u>Berlin Dev. Assocs. v. Dep't of Soc. Welfare</u>, 142 Vt. 107, 110 (1982) (noting that for a grant of summary judgment one party must be "so clearly correct as to be entitled to a judgment 'as a matter of law'"); see also 10B C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 2732 (3d ed. 1998) (noting that in some "circumstances trial courts occasionally will refuse summary judgment in order to develop a complete record for review and to bring disputed issues into sharper focus"). For these reasons, we cannot grant summary judgment to either party. We look forward to the presentation of evidence at trial, so that we may render a conclusive determination on this legal issue.

### Conclusion

For the reasons stated above, the Village's motion for summary judgment and Union Bank's cross-motion for summary judgment are **DENIED.**

Done at Newfane, Vermont this 30th day of October, 2013.

_____
Thomas S. Durkin, Environmental Judge

---

[1] As we have already granted Cross-Appellant Jean Jenkauskas party status with regard to Criterion 1(D) and expect a merits hearing on the issue of the Project's impact on flooding under that Criterion, our determination on compliance with the applicable Village Plan provisions regarding floodplain development is also best reserved for trial.